[Civ. No. 1561.   Third Appellate District.—November 8, 1916.]

GLADYS M. SOWASH, Respondent, v. T. H. EMERSON, as Administrator of the Estate of Thomas R. Emerson, Deceased, Appellant.

SERVICES—NURSING AND CARING FOR DIPSOMANIAC—IMPLIED CONTRACT.—In an action to recover for personal services in taking care and personal charge of a person who had become so addicted to the use of intoxicating liquors that he had practically developed into a dipsomaniac, it is not necessary that the plaintiff should prove an express contract to pay her compensation for such services, where an express contract to furnish board and lodging is alleged and proven, in addition to proof of the performance and acceptance of the services in question.

ID.—PERFORMANCE OF EXTRA SERVICES—RECOVERY OF COMPENSATION—EXPRESS PROMISE TO PAY—PROOF.—Where extra services are of the same kind as those which the original agreement required the servant to render, the latter, to entitle him to recover for such extra services, must show an express contract or agreement or promise on the part of the master to pay him extra compensation therefor; but where the extra or special services are dissimilar to, or wholly different in kind from, the services to be performed under the original contract of employment, then proof of the fact of the performance of such extra services, together with proof of the acceptance thereof by the master, will raise an implied promise on the part of the latter to pay the reasonable value of such extra or special services.

ID.—AGREEMENT TO FURNISH BOARD AND LODGING—NURSING NOT INCLUDED.—The mere agreement to furnish board and lodging does not necessarily or by logic of the fact include nursing, and unless the contract to furnish the former expressly includes the latter, or is expressed in language from which no other just conclusion may be drawn, a promise to pay extra compensation for the services of nursing will be implied.

APPEAL from a judgment of the Superior Court of Humboldt County, and from an order denying a new trial. Clifton H. Connick, Judge.

The facts are stated in the opinion of the court.

Frank McGowan, and Denver Sevier, for Appellant.

George H. Burchard, for Respondent.

HART, J.—Paragraph two of the complaint in this action alleges that the plaintiff, between the first day of October, 1913, and the twentieth day of September, 1914, at the city of Arcata, county of Humboldt, rendered certain special services for the defendant's intestate, Thomas R. Emerson; that said special services consisted of taking care and personal charge of said Thomas R. Emerson during all of the period mentioned, "looking after him and giving him a home and personal attention all of said time, frequently when said Emerson was in a besotted and drunken condition, and helpless from overindulgence in intoxicating liquors." It is further alleged that during the said period of time the plaintiff contracted to give and did give to said Emerson room and board, "but that the aforesaid special services set forth and referred to in paragraph 2 hereof formed no part of said contract, but were of a special character, rendered necessary by the drunken, beastial, and often nauseating and repulsive physical and mental condition in which said Emerson was frequently during said period." It is then alleged:

"That said special services were rendered by said plaintiff at the request of said Thomas R. Emerson, and were reasonably worth the sum of one hundred dollars per month, and were rendered as aforesaid for a term of eleven months and nineteen days, and were reasonably worth in all the sum of eleven hundred and fifty-seven dollars; that no part of the same has been paid."

It is further alleged that the said Emerson died on the ——— day of September, 1914, and that his son, T. H. Emerson, the defendant herein, was, after due proceedings, appointed by the superior court of Humboldt County administrator of the estate of the said Thomas R. Emerson, deceased.

The complaint states that the plaintiff and her husband entered into an agreement whereby it was agreed and understood between them that all money earned by her by reason of the special services rendered for and in behalf of said Thomas R. Emerson should be her separate property; and that said earnings are her separate property.

It is alleged that the plaintff, within legal time after the publication of notice to the creditors of Thomas R. Emerson, deceased, presented to the administrator of the estate of the said deceased, in due form and verified, the claim upon which

this action is based, and that the said administrator rejected the same.

The prayer is for judgment for the sum of $1,157.

The answer specifically denies each and all of the material allegations of the complaint, and, in addition thereto, sets up several distinct special defenses, the substance of which may thus be stated: 1. That the contract for the services mentioned, if any such contract was at all made, was not to be performed during the lifetime of the deceased; that the consideration for said services was that the decedent was to devise property to the plaintiff or make provision in his will for plaintiff, "and that such contract, if any was entered into as aforesaid, is invalid as neither said contract nor any note nor any memorandum thereof is in writing and subscribed or subscribed by the decedent or his agent"; 2. That the services referred to in the complaint, if such services were rendered at all, were so rendered for and in expectation that the decedent would provide for the plaintiff through a devise or bequest or provision in the decedent's last will; 3. That prior to the commencement of this action and to the presentation of any claim herein, "plaintiff received and accepted in full satisfaction, payment, and discharge of the cause of action set forth in the amended complaint and all claims that she had or claimed against this estate, a carpet of the value of $125 or thereabouts."

The court found: "That all the allegations of the plaintiff's first amended complaint herein are true, except that said services so rendered and performed as alleged were reasonably worth the sum of four hundred and ninety-four dollars; that all the denials and allegations of the answer herein to the first amended complaint are untrue."

Conclusions of law were filed and judgment was rendered and entered accordingly.

The defendant appeals from said judgment and the order denying him a new trial.

It appears from the evidence that the deceased, a resident for many years of the city of Arcata, in Humboldt County, and a man of considerable means, had become so addicted to the use of intoxicating liquors as that he practically developed into a dipsomaniac. He had a wife and a son (the defendant in this action), but, it appears, that at all the times referred to in the complaint they resided in one of the eastern

states and that, so far as his family were concerned, he lived alone in the city of Arcata. For a long period of time prior to his death, he was, it is made to appear, in an almost uninterrupted condition of inebriety, so much so, indeed, that Dr. McKinnon, one of the local physicians, was frequently called in to professionally attend and so relieve him of the effects of the drinking "sprees" which seem to have grown into a custom with him.

The deceased was a personal friend of the plaintiff and her husband, and there is evidence which shows that the plaintiff, against the advice of her husband, agreed to furnish the deceased with board and lodging at their home. The deceased, while in a very serious condition, physically, as the result of long-continued intoxication, was taken to the home of the plaintiff on the first day of October, 1913, and remained there as boarder and lodger until the twentieth day of September, 1914, or until a few days prior to the date of his death, which was on some day in the latter part of said month and year.

The testimony does not disclose the extent of the compensation which the deceased agreed to pay the plaintiff, or that she received for the board and lodging so furnished. It is very clear from the testimony, however, that, after the deceased took up his residence with the plaintiff, he continued to indulge excessively in alcoholic liquors; that, as a result thereof, he was, during much of the time, sick and wholly unable to take care of himself, and consequently required attention and assistance, both during the day and the nighttime after his retirement; that medicine, prescribed by his physician, had to be given him, and his food often brought to his room; that, on occasions when inordinately intoxicated, he was exceedingly filthy in his personal habits, often soiling his outer clothes with undigested matter ejected from his stomach and his undergarments and person with excrements from his bowels and the contents of his bladder, he being unable to control himself in those particulars by reason of the helpless physical and mental condition in which his inebriety placed him. Thus he required almost constant care and attention, and the evidence shows that the plaintiff bestowed upon him during the period that he boarded and lodged at her home the attention required. She watched, cared for, fed and administered to him medicine when he was confined to his bed; she often bathed him when in the

filthy condition above described; she would, when he was absent from the house when he ought to be there, go out and search for, find, and assist him to her home and his room. In brief, there is evidence to support the conclusion that she as solicitously and tenderly cared for him in his helplessness as if he were her father or a son or a brother.

The trial court was clearly warranted by the evidence in finding the facts as above recited, notwithstanding that there was an adversary showing from which, it may be conceded, the court might have found the claim of the plaintiff to be spurious.

The position of the appellant is, however: That, while the complaint declares upon an express contract, no evidence was presented showing an express contract for the performance of the services described in the complaint, nor is there any evidence showing whether the claim as presented to the administrator was based upon or the outgrowth of an express or an implied contract. The argument from this postulate is that, since the plaintiff was under employment of the deceased to perform the service of providing him with board and lodging, ''the plaintiff must fail, because the rule is inexorable that plaintiff must show an express contract to pay for these 'special services' '' claimed.

It is very clear that the plaintiff counts upon an implied and not upon an express contract. It is true, as must always be so in a case of an implied contract for personal services, that the complaint must show, as the complaint in this case states, that there was an express agreement for the hiring, but such an averment of itself does not disclose an express as contradistinguished from an implied contract. If the pleaded facts show, as should always be shown or pleaded to avoid the implication that the services were to be performed gratuitously, that there was an agreement by one of the parties to employ the personal services of another, and it is further shown that there was no agreement as to the compensation to be paid for such services, then an implied and not an express contract is disclosed, and to recover thereon the plaintiff must count upon a *quantum meruit*, or sue for the reasonable value of his services, or, as the words describing that common count plainly signify, for whatever his services may reasonably deserve or merit.

32 Cal. App.—2

The rule sought to be invoked and applied here by the defendant, however, does not, in a case where an employee under a contract to perform certain stipulated services for a fixed compensation sues to recover for special services rendered to his master of a dissimilar nature to those for the performance of which he was originally employed, require such employee to show that such extra services were rendered in pursuance of an express contract, whereby the master agreed or promised to pay extra compensation therefor, to entitle the servant to recover such extra compensation. If he can show that dissimilar special services were by him performed and that the master accepted the same and the benefits thereof, then the law will imply a promise to pay therefor, and thus there is shown a contract upon which he is entitled to recover. (*Hay* v. *Petersen,* 6 Wyo. 419, [34 L. R. A. 581, 45 Pac. 1073].) The general rule is that an agreement to pay for services rendered and accepted is presumed unless the parties are members of the same family or near relatives. (Lawson on Evidence, sec. 77.) In this case the burden of proving that the services were rendered voluntarily, or that they were within the scope of the original employment, rested upon the defendant. (*Schroeder* v. *Schroeder,* 119 Iowa, 67, [93 N. W. 78].)

One of the cases relied upon by the defendant is *Cany* v. *Halleck,* 9 Cal. 198, 203, wherein the supreme court quoted approvingly and applied the following rule, as stated in Smith's Master and Servant, pages 101, 102: "Upon similar principles it is equally clear that where a stipulated remuneration has been agreed upon, the servant has no claim to additional remuneration on the mere ground of his performance of additional services. Unless he can prove some contract, either express *or implied,* on the part of his master to pay him an increased salary for his additional services, he can recover no remuneration for them."

Again, the defendant cites the cases of *New York Life Ins. Co.* v. *Goodrich,* 74 Mo. App. 355, 362, and *Pew* v. *First National Bank,* 130 Mass. 391, wherein the rule is laid down: "That the presumption of the law is that all services rendered by an employee during the period for which he is employed, of a similar nature to those of his regular duties, are paid for by his salary, and to overcome this presumption he must show an express agreement for compensation."

· We think the true rule may be stated, as we have above indicated it to be, as follows: That, where the extra services are of the same kind as those which the original agreement requires the servant to render, then the latter, to entitle him to recover for such extra services, must show an express contract or agreement or promise on the part of the master to pay him extra compensation therefor; but that, where the extra or special services are dissimilar to or wholly different in kind from the services to be performed under the original contract of employment, then proof of the fact of the performance of such extra services, together with proof of the acceptance thereof by the master, will raise an implied promise on the part of the master to pay the reasonable value of such extra or special services.

The testimony in this case is of a somewhat desultory character, but in a case like this it is by no means surprising that it should be so. The plaintiff herself was, most naturally, more familiar with the facts, circumstances, and terms of her employment and the extent of her services to the deceased as a nurse than any other person; but, under the law—a most salutary rule, indeed—she was precluded from giving any testimony in the case bearing upon the circumstances and terms of her employment to render the special services for which she here seeks the recovery of reasonable remuneration. (Code Civ. Proc., sec. 1880, subd. 3.) However, as before declared, the evidence was such as to warrant the trial court in finding, as it did find, that the original agreement between the plaintiff and the deceased was that she was to provide the latter with board and lodging and nothing more. And there is sufficient support for the finding that the plaintiff rendered to the deceased services as a nurse, and, while there is no direct proof that the deceased expressly requested the plaintiff to perform for him those services, or that he promised to pay her additional compensation for the same, yet it is very clear that she did render those services and that he accepted them and received the benefits flowing therefrom.

That the services the plaintiff was to render the deceased under the original engagement, or the contract as it was originally made, are not similar in nature or kind to the duties required of a nurse, seems to us to be a very obvious proposition. Abstractly speaking, the distinction between the two kinds of services is the same as the distinction between a

house or a hotel maintained exclusively for the purpose of furnishing board and lodging to the public and a hospital, whose sole and exclusive function is to care for and minister to the sick or physically infirm. While board and lodging are ordinarily furnished patients in a hospital maintained for the care of the physically sick, still they are but essential incidents to the paramount or main purpose or object or business of such an institution, viz., to nurse the physically sick. Indeed, nursing is a distinct scientific profession, the right and the ability to practice which are justly recognized as proper subjects of regulation by the state. It is a profession whose peculiar duties are more nearly allied or analogous to those of the profession of medicine than to those of the business of furnishing board and lodging for pay, and yet is wholly independent of and materially different in nature from the medical profession. The courts have, therefore, well said, when occasion has called for a judicial expression upon the subject, that the mere agreement to furnish board and lodging does not necessarily or by logic of the fact include nursing, and that, unless the contract to furnish the former expressly includes the latter, or is expressed in language from which no other just conclusion may be drawn, a promise to pay extra compensation for the services of a nurse in such a case as this will be implied. (See *Pfeiffer* v. *Michelson,* 112 Mich. 614, [71 N. W. 156]; *Gates* v. *Gilmer* (Tenn.), 48 S. W. 280.)

The defendant introduced no proof in support of the several special defenses set up in the answer. He did, however, introduce some evidence tending to overthrow the presumption, arising from the fact of the rendition of services as a nurse, and the fact of the acceptance thereof by the deceased, of a promise on the latter's part to pay the plaintiff increased compensation for such additional services, but the trial court, to which the determination of the questions of fact was submitted, was not satisfied with the showing so made; and, since it was for the trial court in this case to say, from all the circumstances brought to its attention through the evidence, viewed by the light of the rules of law above stated, whether there was or was not an agreement between the parties that the plaintiff should receive extra or additional compensation for the extra or special services described in her complaint, this court is concluded by the finding of said court upon that

proposition, there being, as stated, sufficient evidence to support said finding.

The judgment and the order appealed from are affirmed.

Chipman, P. J., and Burnett, J., concurred.