[Sac. No. 4462. In Bank.—September 23, 1931.]

ELIZABETH FLANAGAN, Appellant, v. THE CAPITAL NATIONAL BANK OF SACRAMENTO (a National Banking Association), Executor, etc., et al., Respondents.

W. H. Hatfield and Ray T. Coughlin for Appellant.

C. F. Metteer, White, Miller, Needham & Harber and Sumner Mering for Respondents.

LANGDON, J.—This action was brought by plaintiff to cancel a so-called "waiver" of community property rights in the estate of James Flanagan.

James Flanagan made his will on March 29, 1929. By its terms he left considerable real and personal property to plaintiff. The remainder of his estate he left to a brother, a sister and a niece. At the time of its execution, plaintiff signed an instrument reciting that she was the wife of the testator, that she had read the will, and that "in consideration of the provisions made in and by said will" she elected to accept its provisions and conditions, including the disposition of the "community property", and

that she waived all claim of said community property. Upon the death of the testator the will was admitted to probate. Thereafter this action was commenced by plaintiff against the executor and the residuary beneficiaries. The trial court granted defendants' motion for a nonsuit.

We think that the trial court's action is fully sustained by the record. The "waiver" was in fact a contract, by the terms of which plaintiff accepted certain devises and bequests under the will in lieu of any rights she might have in any community property. Such an agreement is clearly supported by consideration and is binding upon the plaintiff, irrespective of any element of estoppel arising from the testator's change of position in reliance upon the representation contained in the instrument. (See *Estate of Whitney*, 171 Cal. 750 [154 Pac. 855]; *Estate of Wyss*, 112 Cal. App. 487 [297 Pac. 100].)

■ However, there is no need to rest this decision on the validity of that instrument, for the facts show that plaintiff was not the wife of the decedent and her claim of community property rights was clearly unfounded. It is admitted by plaintiff that she never was legally married to the decedent, but it is urged that she has the status of a putative or *de facto* wife, and is entitled as such to claim a share in the property on equitable grounds, under the rule laid down in several decisions in this state. (See *Coats* v. *Coats*, 160 Cal. 671 [36 L. R. A. (N. S.) 844, 118 Pac. 441]; *Schneider* v. *Schneider*, 183 Cal. 335 [11 A. L. R. 1386, 191 Pac. 533]; *Maggi* v. *La Rocha*, 54 Cal. App. 98 [201 Pac. 143]; *Figoni* v. *Figoni*, 211 Cal. 354, 295 Pac. 339].) In all of these cases, the essential basis of recovery is a *bona fide* belief on the part of the "wife" in the existence of a valid marriage. No such belief is shown by the evidence before us. In about the year 1911, plaintiff went to live with Flanagan, and to outsiders they declared that they were married. No license was procured and no solemnization was had. In the examination of plaintiff by her attorney we find the following:

"Q. What did he say about the license?

"A. He said it was not necessary; we did not have to have any license. He says, 'We will get along as good as any couple that is married and better.'"

Further on she testified:

"Q. You relied upon his representations that you and he were just as good as married?

"A. I did, nothing was ever discussed about it."

It would be difficult to believe that even an inexperienced foreigner, unacquainted with the laws and customs of this country, would consider that by this arrangement she had contracted a valid marriage. But plaintiff was not inexperienced. She had lived all her life in California, and had been previously legally married and divorced. Everything in the record suggests that she viewed the relationship not as a marriage, but as a satisfactory substitute for a marriage.

In practically all of the cases on this subject, the putative wife who was permitted to recover complied with some or all of the legal requisites of a marriage, and the invalidity arose from some fact of which she knew nothing, such as a prior undissolved marriage of the other spouse. Mere cohabitation has also been held sufficient in such states as recognized common-law marriages. (See note, 11 A. L. R., 1394; Evans, Property Interests Arising from Quasi-Marital Relations, 9 Corn. L. Q. 246.) None of these decisions offers any support to plaintiff's position.

Of course, this case does not involve a *quasi*-contractual claim for the value of services rendered, and, in view of the substantial provision made for plaintiff in the will, such a claim would doubtless fail.

The judgment is affirmed.

Preston, J., Curtis, J., Shenk, J., Seawell, J., and Waste, C. J., concurred.