[Civ. No. 16262. Second Dist., Div. Three. Nov. 19, 1948.]

CATHERINE E. LAZZAREVICH, Plaintiff and Appellant, v. JOHN LAZZAREVICH, Defendant and Appellant.

Howard B. Henshey and Clarence Thomason for Plaintiff and Appellant.

Eugene L. Wolver for Defendant and Appellant.

VALLÉE, J.—Two appeals are pending in this nonjury case from a judgment rendered in favor of plaintiff in the sum of $2,350. Plaintiff appeals upon the judgment-roll. Defendant appeals upon a settled statement pursuant to rule 7(b), Rules on Appeal.

Plaintiff commenced the action on August 14, 1946. The first cause of action sought recovery of the reasonable value of work and services performed by plaintiff for defendant from July, 1935, to April, 1946, in maintaining a home for defendant and their son, "cooking for him, washing defendant's clothes, and performing the entire household services for defendant," during all of which period she "believed that she was the legal wife of defendant." The second cause of action sought recovery of contributions made by plaintiff to the household expenses from January 17, 1943, to June 13, 1945, consisting of earnings received by plaintiff while employed in a defense plant and during the period she believed she was defendant's lawful wife. Defendant answered, denying generally all allegations of the complaint and alleging, as an affirmative defense, that the causes of action were barred by the statute of limitations. (Code Civ. Proc., §§ 337, 339.) He also alleged, as additional affirmative defenses, that the services rendered by plaintiff in his behalf were voluntarily rendered without any agreement or understanding that she would be compensated therefor; and that plaintiff had been fully compensated for all services rendered by her in his behalf.

The settled statement reveals the following facts: The parties were married in Los Angeles on March 18, 1921. One child, a daughter, was born, the issue of this marriage. Subsequently defendant (as plaintiff) filed an action for divorce in Los Angeles County. An interlocutory decree was granted the husband and entered on March 18, 1932. On September 6, 1933, without the husband's knowledge or request, his attorney had a final decree of divorce entered. Subsequent to the entry of the interlocutory decree and several months prior to the entering of the final decree, and thereafter, defendant continually sought a reconciliation with his wife. They

became reconciled in July of 1935. Both parties testified that before the reconciliation occurred defendant informed plaintiff that no final decree had been entered. Defendant testified that he so believed and so informed plaintiff. The parties then took a trip to Reno, Nevada, the Pacific Northwest, and on their return stopped at Merced, California. While there, defendant made inquiry of the county clerk concerning the remarriage of the parties. He was informed that since no final decree had been entered in the divorce action no remarriage was necessary. This information defendant imparted to plaintiff. Thereafter, on April 23, 1936, a son was born to the parties. As an aftermath of domestic difficulties which arose between them, plaintiff, on August 1, 1945, consulted her attorneys about a divorce. On August 10, 1945, she was informed by them that the court records disclosed the entry of a final decree of divorce on September 6, 1933. Plaintiff testified that she would not have lived with defendant if she had not believed that she was his wife. The parties remained separated from August 1, 1945, until October 1, 1945, when the plaintiff, upon the promise of defendant that he would remarry her if she would return to him, again became reconciled. They again separated on April 1, 1946. From July, 1935, on, defendant owned a half interest, as a partner, in Economy Plumbing Company. During the periods from July, 1935, to August, 1945, and from October, 1945, to April, 1946, plaintiff performed the usual household duties of a wife, excepting that during the period from January 17, 1943, until June 13, 1945, she worked in a defense plant. During this latter period she did not render to defendant the same amount of household services as she had when she was not employed, but during this period she contributed all of her salary, $172.50 a month, to the household expenses. It was agreed between the parties that plaintiff would contribute her salary to the living expenses and the money saved by defendant thereby would be put into war bonds for their mutual benefit. Plaintiff testified that during the period she worked defendant told her he was able to save and had bought $11,000 worth of war bonds; that she saw two books among his personal effects indicating that he had $11,000 worth of war bonds. During a short period of time after the reconciliation the parties lived on Isabel Street on some property owned by plaintiff's mother. The property was about to be foreclosed and defendant paid off the encumbrances, advanced other monies for the care and maintenance of the property,

and subsequently the property was deeded (apparently by plaintiff's mother) to the parties in joint tenancy. This property was thereafter managed by plaintiff's sister who accounted to defendant for all monies collected and expenditures made by her. Defendant then purchased a home in San Fernando Valley through a veterans' loan, which property is now held by the parties in joint tenancy. Defendant testified that he may have had $11,000 worth of war bonds in the office safe of Economy Plumbing Company, but of these only $6,000 were his, the remainder belonging to members of his family and to a workman of the company; that at the time this action was brought he only had $2,000 worth of bonds and at the time of the trial had less than $1,000, part of the proceeds of the bonds having been spent for the support of his son; that he maintained a bank account; that he owned a one-half interest in Economy Plumbing Company; that although the amount of stock varied from time to time his capital investment in the partnership and the value of his partnership interest has remained the same for the last 15 years.

The court found that plaintiff and defendant were married on March 18, 1921; that thereafter defendant commenced an action for divorce against plaintiff and an interlocutory decree of divorce was entered March 18, 1932; that thereafter on September 6, 1933, "upon the written request of the attorney for plaintiff in said action" a final decree of divorce was entered; that from and after the entry of the interlocutory decree defendant, on many occasions, requested a reconciliation from plaintiff and on many occasions stated and represented to plaintiff that the final decree had not been entered and that they were still husband and wife; that plaintiff believed and relied upon these representations and consented to a reconciliation in July, 1935; that for a period of 126 months, to wit, from July 31, 1935, until on or about April 1, 1946, except for a two months' period during which the parties were separated, the parties lived together as husband and wife; that plaintiff first learned of the entry of the final decree on or about August 10, 1945; that during the period of 126 months plaintiff performed work and services for defendant in maintaining a home for him and the son of the parties born to them on April 23, 1936, which services consisted of cooking, washing defendant's clothes and performing for him the entire household services; that for a period of 29 months, to wit, from January 17, 1943, to

June 13, 1945, plaintiff worked in a defense plant and during said period contributed toward the household expenses the sum of $172.50 per month; that the reasonable value of the services rendered during the 126-month period, over and above the value of the support and maintenance furnished her by defendant, was $50 per month, except during the period of 29 months during which she rendered less service by reason of working in a defense plant, and during said period of 29 months the reasonable value of her services, over and above the value of support and maintenance furnished her by defendant, was $25 per month. The court concluded that: (1) plaintiff was entitled to recover the reasonable value of the services rendered for defendant during the period she lived with him under the mistaken belief that she was still married to him and for contributions made to him within that period, except that recovery for services rendered and for contributions made prior to August 14, 1944, was barred by the statute of limitations (Code Civ. Proc., § 339, subd. 1); (2) plaintiff was entitled to a judgment in the amount of $625, being at the rate of $50 per month for a period of seven and one-half months between August 14, 1944, and April 1, 1946, and at the rate of $25 per month for a period of 10 months within said period; (3) plaintiff was entitled to judgment in the sum of $1,725 for contributions made by her to defendant for a period of 10 months between August 14, 1944, and April 1, 1946.

Upon his appeal defendant contends that the plaintiff is not entitled to a judgment for the value of her services or for contributions because she has received one-half of all the property acquired by the parties after their reconciliation and that he, therefore, has not been unjustly enriched. This contention is not tenable.

The rights and remedies afforded a woman who cohabits with a man, believing in good faith that they are validly married, may be epitomized generally as follows:

(1) In some jurisdictions she has an action in damages for deceit against her putative husband in those cases where by fraud or misrepresentation he has induced her to enter into the supposed marriage relation. (See *Cooper* v. *Cooper*, 147 Mass. 370 [17 N.E. 892, 9 Am.St.Rep. 721]; *Blossom* v. *Barrett*, 37 N.Y. 434 [97 Am.Dec. 747]; *Larson* v. *McMillan*, 99 Wash. 626 [170 P. 324]; *Amsterdam* v. *Amsterdam*, 56 N.Y.S.2d 19; Evans, *Property Interests Arising From Quasi-Marital Relations*, 9 Corn. Law Q. 246, 249, and cases therein

cited; 17 Georgetown Law J. 60, 61; 19 So.Cal.L.Rev. 134. See, also, Rest., Restitution, § 152; Rest., Torts, § 555.)

(2) In those jurisdictions in which the community property doctrine prevails, it is generally recognized that a de facto spouse is entitled to the rights accorded a lawful spouse in the property acquired during the de facto marriage. (*Coats* v. *Coats,* 160 Cal. 671 [118 P. 441, 36 L.R.A. N.S. 844]; *Schneider* v. *Schneider,* 183 Cal. 335 [191 P. 533, 11 A.L.R. 1386]; *Macchi* v. *LaRocca,* 54 Cal.App. 98 [201 P. 143]; *Figoni* v. *Figoni,* 211 Cal. 354, 357 [295 P. 339]; *Feig* v. *Bank of Italy etc. Assn.,* 218 Cal. 54, 58 [21 P.2d 421]; *Feig* v. *Bank of America,* 5 Cal.2d 266, 273 [54 P.2d 3]; *Sanguinetti* v. *Sanguinetti,* 9 Cal.2d 95, 99 [69 P.2d 845, 111 A.L.R. 342]; *Marsh* v. *Marsh,* 79 Cal.App. 560 [250 P. 411]; *Santos* v. *Santos,* 32 Cal.App.2d 62, 65 [89 P.2d 164]; *Goff* v. *Goff,* 52 Cal.App.2d 23, 30 [125 P.2d 848]; *Blache* v. *Blache,* 69 Cal.App.2d 616, 624 [160 P.2d 136]; *Blache* v. *Blache,* 78 Cal.App.2d 168 [177 P.2d 345]; *Estate of Krone,* 83 Cal. App.2d 766, 769 [189 P.2d 741]; 16 Cal.Jur. § 21, p. 926; 35 Am.Jur. §§ 50-54, 215-217; 11 Am.Jur. § 8, p. 180; 2 So. Cal.L.Rev. 293, 294; 9 Cal.L.Rev. 68; Evans, *Property Interests Arising From Quasi-Marital Relations,* 9 Corn.L.Q. 246, 257; 17 Georgetown Law J. 60, 64; anno: 11 A.L.R. 1394, 1395; 75 A.L.R. 732; 36 L.R.A. N.S. 845; 96 Am.St.Rep. 922; Ann.Cas. 1913A 237.)

(3) In some jurisdictions, including California, the deluded woman is permitted to recover the reasonable value of her services over and above the value of the support and maintenance furnished her by her supposed husband. (*Sanguinetti* v. *Sanguinetti,* 9 Cal.2d 95, 100 [69 P.2d 845, 111 A.L.R. 342]; *Mixer* v. *Mixer,* 2 Cal.App. 227 [83 P. 273]; *Marsh* v. *Marsh,* 79 Cal.App. 560 [250 P. 411]; *Taylor* v. *Taylor,* 66 Cal.App.2d 390, 398 [152 P.2d 480]; *Higgins* v. *Breen,* 9 Mo. 297; *In re Fox,* 178 Wis. 369 [190 N.W. 90, 31 A.L.R. 420]; *Sanders* v. *Ragan,* 172 N. C. 612 [90 S.E. 777, L.R.A. 1917B 681]; Keener on Quasi-Contracts, p. 321 et seq.; Evans, *Property Interests Arising From Quasi-Marital Relations,* 9 Corn. Law Q. 246, 251; 17 Georgetown Law J. 60, 66; 35 Am.Jur. § 55, p. 218; anno: 31 A.L.R. 424; 111 A.L.R. 348.)

In *Sanguinetti* v. *Sanguinetti, supra,* 9 Cal.2d 95, the court said (p. 100): ''Where an invalid marriage has been procured by fraud of the *de facto* husband, who is aware of the invalidity of the marriage, the right of the wife who

has acted in good faith to recover the reasonable value of her services over and above the value of the support and maintenance furnished her by her supposed husband, has been sustained in a number of jurisdictions, including this state. (*Mixer* v. *Mixer*, 2 Cal.App. 227 [83 P. 273]; *Marsh* v. *Marsh*, 79 Cal.App. 560, 565, 571 [250 P. 411]; *Higgins* v. *Breen*, 9 Mo. 297; *Re Fox*, 178 Wis. 369 [190 N.W. 90, 31 A.L.R. 420], with note; *Sanders* v. *Ragan*, 172 N. C. 612 [90 S.E. 777, L.R.A. 1917B 681]; Keener on Quasi-Contracts, p. 321 et seq.)

"The basis of recovery for services in the above cited cases is *quasi* contractual. The supposed husband has been unjustly enriched by the amount by which the reasonable value of the services rendered to him by his *de facto* wife exceed the amount devoted by him to her support and maintenance. These services would not have been rendered but for a belief in the validity of the marriage and the continuance of the incidents of status incident to a valid marriage. It is just and equitable that the *de facto* husband should make compensation for what has been rendered to him under a mistaken belief in the validity of the marriage which was induced by his own fraud. The law raises the promise to pay in such cases." In the Sanguinetti case, the plaintiff wife sued for a divorce and annulment based on the fact that at the time of the alleged marriage she had a former husband living. Defendant filed an answer and a cross-complaint for annulment. The court granted the annulment on defendant's cross-complaint. The court found, however, that neither party knew of the illegality of the marriage until the filing of the complaint, that there was no community property, and that the plaintiff was entitled to recover $1,250 as the reasonable value of her services to defendant during the time they lived together as husband and wife, some seven years and seven months. The judgment was affirmed on appeal. It will be noted that the court went a step further than the courts had gone in the cases it cited and held that in the absence of fraud on the part of the putative husband the wife is entitled to compensation.

In view of the findings, which are not challenged here, that material misrepresentations as to the marital status of the parties were made by the defendant, we think the present case falls squarely within the principles set forth in section 40 of the Restatement of the Law of Restitution. This section reads in part: "A person who has rendered services to another

. . . is entitled to restitution therefor if the services were rendered . . . (a) because of the fraud or material misrepresentation of the other . . ." In comment b the following appears: "The rule stated in this Clause [(a)] is applicable both where the services are obtained by a consciously false statement and where they are the result of an innocent but material misstatement. The fact that the one rendering the services does not expect to be compensated therefor or otherwise to receive benefit is immaterial. . . . Where domestic services are rendered to a supposed spouse because of an innocent misrepresentation of marital status, the one rendering the services has the burden of proving that the services are of greater value than the benefits received." (See, also, illus. 4.)

 There is no valid distinction between the case at bar and cases dealing with a situation where the parties engaged in a marriage ceremony. In the latter class of cases, the putative wife believes in the existence of a valid marriage in good faith, believes that she is a lawful wife, her services are rendered solely because of that belief, and upon those grounds recovery is permitted. In the case at bar plaintiff had been the lawful wife of defendant. She, in good faith, believed that a second marriage ceremony was unnecessary because the original marriage had never been dissolved, that she was still his lawful wife, and the services were rendered solely because of that belief. In each case the putative husband "has been unjustly enriched by the amount by which the reasonable value of the services rendered to him by his *de facto* wife exceed the amount devoted by him to her support and maintenance." (*Sanguinetti* v. *Sanguinetti, supra,* 9 Cal.2d 95, 100.) (Cf. *Schneider* v. *Schneider,* 183 Cal. 335, 341 [191 P. 533, 11 A.L.R. 1386]; *Feig* v. *Bank of Italy etc. Assn.,* 218 Cal. 54, 58 [21 P.2d 421].) In *Marsh* v. *Marsh,* 79 Cal.App. 560, the court said, p. 565 [250 P. 411]: "It appears from the record that the respondent [found to be a putative wife] worked and saved, that she kept a home for the deceased during a period of more than twenty years, and if it be true that she was not the lawful wife of the deceased, she would nevertheless be entitled to compensation for her services, unless it be shown that the relations assumed by her were characterized by bad faith and illicit in their inception and continuance. . . . [P. 571] Again, as stated in the case of Valentine Fox, deceased, reported under the title of *Wolf* v. *Fox,* 178 Wis. 369 [31 A.L.R. 420, 190 N.W. 90]: A woman who, in good faith, lives with a man under the mistaken belief

caused by his fraud that she is his wife, may recover compensation from his estate for the value of the services rendered, and, as stated in *Higgins* v. *Breen,* 9 Mo. 497, a woman so living with a man may recover not only for her services as a housewife, but also for aid rendered to him in his business.''

The evidence supports the finding that plaintiff rendered services to defendant over and above the support and maintenance furnished her by her supposed husband and the conclusion that she was entitled to compensation therefor.

■ While we have not been cited to a California case on the propriety of the court awarding plaintiff judgment for contributions made to her husband during the de facto marriage, there is authority for such action on the part of the court in other jurisdictions. In *Fox* v. *Dawson's Curator,* 8 Mart.O.S. (La.) 94, the wife was permitted to sue the estate of her de facto husband and to recover for services rendered the husband, the use of her furniture, the hire of her negroes, moneys of hers received by him, and moneys of hers used in paying his debts after his death. In *Sanders* v. *Ragan,* 172 N. C. 612 [90 S.E. 777, 778, L.R.A. 1917B 681], the court upheld plaintiff's right to recover for money advanced by the de facto wife and for services rendered and received by the intestate to his pecuniary advantage. *In re Fox,* 178 Wis. 369 [190 N.W. 90, 31 A.L.R. 420], it was held that the de facto wife was entitled to recover for services rendered and for the rental value of the house she furnished the deceased husband. (See, also, *Wheeler* v. *Wheeler,* 79 Wis. 303 [48 N.W. 260] ; Evans, *Property Interests Arising From Quasi-Marital Relations,* 9 Corn. Law Q. 246, 252, 253; anno: 31 A.L.R. 424.)

The present action is one in *quantum meruit* seeking the recovery of the value of services rendered and contributions advanced by plaintiff during the putative marriage. The action is not one seeking an equitable division of whatever property, if any, may have been acquired by the parties during that period. The issue concerning an equitable division of the property was not presented by the pleadings or the evidence. While it is true, as defendant points out, that the settled statement shows there was some evidence that two parcels of real property acquired during this period now stand in the names of the parties jointly, there is nothing in the record before us to indicate the value of the property or the source or amount of the funds used to acquire the property. No

attempt was made by defendant to go behind the joint tenancy and establish that it was the intention of the parties to hold the property as community property irrespective of the terms of the joint tenancy deed (*Siberell* v. *Siberell*, 214 Cal. 767 [7 P.2d 1003] ; *Cummins* v. *Cummins*, 7 Cal.App.2d 294, 304, [46 P.2d 284] ), or that plaintiff received her interest in the joint tenancy property in compensation for services rendered, or that plaintiff did not acquire that interest by gift, or by devise, or from her own funds. ▮ In the absence of evidence that the property was acquired with community funds with the intention that it should remain community property, the joint tenancy stands as such,—the interest of each party being separate property. (*Siberell* v. *Siberell, supra*; *Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905].) The record before us is devoid of evidence indicating the amount of defendant's earnings during the period of the de facto marriage or the amount in his bank account. The meager evidence appearing in the settled statement, contrary to defendant's contention, reveals that there was little, if any, community property existing at the time the action was filed, defendant testifying that at the time of the trial he had less than $1,000. There is no evidence which would have warranted the trial court in finding that the services rendered by plaintiff prior to August 10, 1945, were voluntarily rendered without any agreement or understanding that she would be compensated therefor, or that she had been fully compensated therefor, or that she has received one-half of all the property acquired by the parties after their reconciliation in July, 1935. The trial court did not err in rendering judgment in favor of plaintiff for services rendered and for contributions advanced by her prior to August 10, 1945.

▮ A different result must obtain as to services performed by plaintiff after August 10, 1945. As we have noted, the parties separated on August 1, 1945. On August 10, 1945, plaintiff discovered that the final decree of divorce had been entered on September 6, 1933. On October 1, 1945, she went to live with defendant and continued to do so until April 1, 1946. The essence of the right of a putative wife to recover for services rendered the putative husband is her belief in the validity of a marriage between them. After August 10, 1945, plaintiff was no longer an innocent, deluded, putative wife. She no longer believed that she was defendant's wife. She knew that she was not. The relationship between the

parties was meretricious after October 1, 1945. Plaintiff was fully aware of the nature of the relationship. The fact that she returned to defendant upon his promise to remarry her is of no import. The ''[e]quitable considerations arising from the reasonable expectation of the continuation of benefits attending the status of marriage entered into in good faith'' which had existed prior to August 10, 1945, did not exist thereafter. (*Vallera* v. *Vallera,* 21 Cal.2d 681, 685 [134 P.2d 761].) In the absence of an express agreement that plaintiff would be compensated for services performed after that date she has no right to compensation therefor. Here there was no express agreement that she should be compensated. (*Vallera* v. *Vallera,* 21 Cal.2d 681 [134 P.2d 761] ; *Flanagan* v. *Capital Nat. Bank,* 213 Cal. 664, 666 [3 P.2d 307] ; *Bacon* v. *Bacon,* 21 Cal.App.2d 540 [69 P.2d 884] ; *Oakley* v. *Oakley,* 82 Cal.App.2d 188, 191 [185 P.2d 848] ; *Baskett* v. *Crook,* 86 Cal.App.2d 355, 359 [195 P.2d 39] ; 2 So.Cal.L. Rev. 293; 20 Cal.L.Rev. 453.) The trial court awarded plaintiff $50 a month for the six months from October 1, 1945, to April 1, 1946, a total of $300. Plaintiff may not recover for this period.

The only point made by plaintiff on her appeal is that the court erred in concluding that she was barred by the statute of limitations from recovery for services rendered and advances made by her to defendant prior to ''a date two years prior to the date of the commencement of her action.'' She argues that she should have judgment ''for the reasonable value of all of the services rendered by her for respondent during the full period of 126 months, based upon the value of such services as found by the trial court, and for all of the advances made by appellant to respondent at the rate of $172.50 per month for a period of twenty-nine months''; that the statute of limitations did not begin to run until the cause of action accrued (Code Civ. Proc., § 312), and that the action did not accrue until August 10, 1945, on which date she discovered that she was not legally married to defendant. The point is good.

An action upon a contract, obligation, or liability not evidenced by an instrument in writing is barred two years after the cause of action accrues (Code Civ. Proc., § 339, subd. 1). ''There are two recognized exceptions to this general rule: 1) If services are performed for a stated sum without any agreement as to when payment is to be made

and the contract is entire, the obligation to pay does not arise until the services are completely performed (*Hagan* v. *McNary,* 170 Cal. 141, 143 [148 P. 937, L.R.A. 1915E 562].) 2) Where services are rendered over a period of time under an express or implied agreement that they shall be paid for at the termination thereof, the statute of limitations begins to run from the time the last service is rendered (*Corato* v. *Estate of Corato,* 201 Cal. 155, 159 [255 P. 825] ; *Mayborne* v. *Citizens T. & S. Bank,* 46 Cal.App. 178, 189 [188 P. 1034].)'' *Johnstone* v. *E. & J. Mfg. Co.,* 45 Cal.App.2d 586, 587 [114 P.2d 658].)

The statute of limitations begins to run on a cause of action based on an implied or quasi contract when the cause of action accrues, and depends largely on the facts of each particular case. (Code Civ. Proc., § 312; 16 Cal.Jur. 521; 54 C.J.S. § 158, p. 99.) ''Quasi contractual obligations have been defined as 'legal obligations arising without reference to the assent of the obligor, from the receipt of a benefit the retention of which is unjust, and requiring the obligor to make restitution.' Woodward's Law of Quasi Contracts, p. 4; Maine's Ancient Law (4th Ed.), p. 344. The action upon such an obligation 'lies for money paid by mistake, or upon a consideration which happens to fail, or for money got through imposition (express or implied). . . . In one word, the gist of this kind of action is that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money.' Woodward, *supra,* p. 4; and see, also, pages 295, 296; also *Moses* v. *McFarlen,* 2 Burr. 1005. In commenting on *Cooper* v. *Cooper,* 147 Mass. 370, 17 N.E. 892, 9 Am.St.Rep. 721, cited *supra,* at pages 324 and 325 of Keener on Quasi Contracts, the learned author says: 'Had the plaintiff in this case surrendered to the defendant money or other chattels to which the defendant asserted a right because of his marital rights as husband, it does not seem possible that a court would hold that, because of the loss of the right to sue in tort by the death of the intestate, no claim could be asserted against his estate for the value so received by him. And yet in point of principle it is submitted that it is impossible to distinguish between the receipt of money or other property by the defendant and the receipt of services. The plaintiff whether she conferred a benefit on the intestate by rendering services, or by delivering to him money or other personal property, in either case parted

with a right in rem under a mistaken supposition, induced by the fraud of the defendant, that the defendant was entitled thereto.' And 'whatever power, therefore, courts of equity possess to prevent and remove the consequences of fraud, they also possess in dealing with the effects of mistake.' Pom. Eq. Juris. (4th Ed.) vol. 11, pp. 1782, 1783.'' (*Fung Dai Kim Ah Leong* v. *Lau Ah Leong,* 9 Cir., 27 F.2d 582, 585.)

The basis of recovery for services and for contributions in the instant case was a quasi contractual one. Upon discovery by plaintiff on August 10, 1945, that she was not, and had not been, since September, 1933, married to defendant, the law implied a promise to pay on the part of the defendant. As the court stated in *Sanguinetti* v. *Sanguinetti,* 9 Cal.2d 95, 100 [69 P.2d 845, 111 A.L.R. 342], the basis of recovery in this type of case is quasi contractual, and ''The law raises the promise to pay in such cases.'' Defendant's obligation is imposed by law regardless of any agreement and to meet the ends of legal justice. (2 Cal.L.Rev. 171, 173.)

Where one person performs services for another, the law raises an implied promise to pay a reasonable compensation therefor. (*Brown* v. *Crown Gold Milling Co.,* 150 Cal. 376 [89 P. 86] ; *Bassett* v. *Fairchild,* 132 Cal. 637 [64 P. 1082, 52 L.R.A. 611] ; *Sowash* v. *Emerson,* 32 Cal.App. 13 [161 P. 1018] ; *Nylund* v. *Madsen,* 94 Cal.App. 441 [271 P. 374] ; *Seib* v. *Mitchell,* 10 Cal.App.2d 91, 94 [52 P.2d 281] ; *Cusick* v. *Boyne,* 1 Cal.App. 643, 645 [82 P. 985].) When services are rendered by one person to another, and such services are accepted by that person, the law not only implies a promise to pay for the services, but also implies that such promise is to be performed at the termination of the services. (*Lloyd* v. *Kleefisch,* 48 Cal.App.2d 408 [120 P.2d 97] ; *Mitchell* v. *Towne,* 31 Cal.App.2d 259 [87 P.2d 908].) In *Larson* v. *McMillan,* 99 Wash. 626 [170 P. 324], an action by a putative wife against the putative husband in deceit for damages, the husband having represented that he was unmarried when in fact he was married, it was held that the deceit did not ripen into a cause of action until discovery by the wife that he had another wife, that the representations were a continuing fraud, and that the wife was not bound to bring suit until she knew or should have known of the fraud.

Since the contributions made and advanced by the plaintiff and the services for which she seeks recovery prior to August 10, 1945, were rendered by her under the mistaken

belief that the marriage had not been dissolved, it is obvious that her cause of action for services rendered and contributions advanced could not accrue until she discovered that the marriage had been dissolved. In a situation such as this, the law not only implies a promise to pay, but must, of necessity, imply a promise to pay at the termination of the services, occurring at the time of discovery of the fact that the marriage had been dissolved, which, in the instant case, occurred on August 10, 1945. While factually dissimilar, we believe this case falls within the principle announced in those cases holding that where there is an express or implied promise to pay on the termination of the services, the cause of action does not arise until the termination of the services and the statute of limitations does not bar any part of the period of continuous services. (*Long* v. *Rumsey,* 12 Cal.2d 334, 342 [84 P.2d 146]; *Reeves* v. *Vallow,* 16 Cal.2d 95 [104 P.2d 1017]; *Lloyd* v. *Kleefisch,* 48 Cal.App.2d 408, 413 [120 P.2d 97]; *Mitchell* v. *Towne,* 31 Cal.App.2d 259, 263 [87 P.2d 908]; *Wax* v. *Adair,* 16 Cal.App.2d 393, 396 [60 P.2d 904]; *Burr* v. *Floyd,* 137 Cal.App. 692, 696 [31 P.2d 402]; *Lauritsen* v. *Goldsmith,* 99 Cal.App. 671, 675 [279 P. 168]; cf. *Mayborne* v. *Citizens T. & S. Bank,* 46 Cal.App. 178, 189 [188 P. 1034].)

*Corato* v. *Estate of Corato,* 201 Cal. 155 [255 P. 825], and *Laven* v. *Cowan,* 108 Cal.App. 628 [291 P. 877], relied upon by defendant, are not analogous. In each of those cases there was an express contract of employment and an express promise to pay for the services. There was no agreement as to the term of service, time of payment, rate or value of the service. Because of the express agreement to pay, it was held that the plaintiff was entitled to compensation from month to month as the services were performed and that the statute of limitations foreclosed recovery for any period except the two years immediately preceding the commencement of the action. The distinguishing fact in the case at bar is stated in the Corato case (p. 160): ''In the Mayborne case [*Mayborne* v. *Citizens T. & S. Bank,* 46 Cal.App. 178 (188 P. 1034)] there was an implied agreement as to the time of payment and said section 2011 [Civ. Code, now Lab. Code, § 3002] would therefore have no application for the reason that the presumption of a hiring by the month would not then be present.'' The want of analogy between the Corato case and the instant one is stated in *Robinson* v. *Chapman,* 98 Cal.App. 278 [276 P. 1081], where the court said (p. 280): ''There was no direct evidence to show that any definite time was fixed for payment of the services, nor was there any evidence to show the exact

amount that was to be paid and appellant claims that the situation is, therefore, controlled by the case of *Corato* v. *Estate of Corato,* 201 Cal. 155 [255 P. 825]. It is there held that in an action upon a claim against the estate of a deceased person for personal services, where the evidence does not show any agreement, either expressly or by implication, for the terms of service, time of payment, or rate or value of the services and no custom on the subject is alleged or proved, the presumption, under section 2011 of the Civil Code, is that the hiring was by the month; and the statute of limitations forecloses a recovery for any period except during the two years immediately preceding the death of the decedent. It is further pointed out in the decision, however, where it is understood expressly or by reasonable implication that the compensation is to be paid at the termination of the rendition of the services, it is a continuing one for which compensation may be recovered when the services terminate and the presumption that the hiring is by the month does not apply.'' Under facts similar to those found by the court here, in *Mixer* v. *Mixer,* 2 Cal.App 227 [83 P. 273], it was said that (p. 231) ''as the services were not rendered under any contract specifying the amount or the time for payment, the wages cannot be held to have accrued monthly.''

The court found that plaintiff during a period of 126 months, from July 31, 1935, until April 1, 1946, performed work and services for defendant. The court also found that the reasonable value of the services performed during the period of 126 months was $50 a month for 97 months and $25 a month for 29 months. Plaintiff performed the services for which she is entitled to recover for 120 months prior to August 10, 1945, the date she discovered that the final decree of divorce had been entered September 6, 1933. As we hold that plaintiff is not entitled to recover for six months after August 10, 1945, for which the court found that the reasonable value of the services was $50 a month, the number of months that she performed services of the reasonable value of $50 a month is 91 months. Under the findings, plaintiff is entitled to recover the sum of $10,277.50 from defendant, as follows: For services rendered, $5,275, being 91 months at $50 a month and 29 months at $25 a month; for contributions, $5,002.50, being 29 months at $172.50.

The judgment is modified by striking therefrom the figures ''$2350.00,'' and inserting in lieu thereof the figures

''$10,277.50.'' As so modified, the judgment is affirmed, plaintiff to recover costs of appeal.

Shinn, P. J., and Wood, J., concurred.

A petition for a rehearing was denied December 17, 1948, and defendant and appellant's petition for a hearing by the Supreme Court was denied January 17, 1949. Shenk, J., Edmonds, J., and Schauer, J., voted for a hearing.