**Jack O. HAGER, Appellant,**

v.

**Marguerite A. HAGER, Appellee.**

**No. 2361.**

Supreme Court of Alaska.

Aug. 20, 1976.

Ernest Schlereth, of Peter Walton & Assoc., Anchorage, for appellant.

M. Ashley Dickerson and John Aaronson, of M. Ashley Dickerson, Inc., Anchorage, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, ERWIN and BURKE, Justices.

OPINION

ERWIN, Justice.

In this appeal we are presented with the question of whether the trial court properly applied AS 09.55.210(6), the statute dealing with the division of property between parties in a divorce action, in deter-

mining that an invasion of appellant Jack Hager's separate pre-marital property was justified under the circumstances.

The relevant facts are not in dispute and may be briefly stated. Jack Hager and Marguerite Mitchell met in California in 1958 while Jack was on vacation. In April, 1959, Marguerite moved to Alaska at Jack's request, and the couple began living together in Anchorage. She thereafter assumed the name Marguerite Hager.

In the summer of 1959 Jack submitted an application to homestead a plot of land on the Kenai Peninsula. Upon receiving an entry permit in early 1960, Jack and Marguerite moved to the homestead site. Both parties participated in homesteading activities, and in 1962 Jack received his patent. Between 1962 and 1969 Jack and Marguerite lived at the homestead approximately half the time. During this period Jack occasionally worked as a heavy equipment operator; and when his employment took him away from the Kenai area, Marguerite would generally accompany him.

In January of 1968 the parties took a brief trip outside the state of Alaska. While in Tijuana, Mexico, Jack and Marguerite went through what they understood to be a marriage ceremony and thereafter believed that they were husband and wife.

Difficulties subsequently arose between the couple, and in August of 1969 Marguerite filed a complaint for divorce in superior court based on incompatibility of temperament. This complaint was subsequently dismissed without prejudice on the grounds that the marriage between the parties had not been shown to be valid.

In February of 1970 Marguerite filed a complaint for "Dissolution of Partnership" wherein recovery against Jack was sought on the theory that the parties had entered into an oral agreement of partnership in the acquisition and perfection of the homestead. In June, 1970, Jack moved for partial summary judgment, seeking an adjudication that the homestead was his sole and separate property and free from any claim of Marguerite's. The motion for partial summary judgment was denied, as was Jack's subsequent petition for review.

Before this matter reached the trial stage Marguerite was allowed to amend her complaint to include an additional cause of action for divorce based on the theory that a common law marriage existed.

Trial commenced on June 19, 1974, and encompassed seven days. During that period the trial judge expanded the scope of the case to include an additional issue: whether Marguerite had any right to Jack's separate property by virtue of her relationship to him as a putative spouse.

After the trial the judge found that Marguerite had not established a prima facie case as to the partnership claim set forth in Count I of her complaint and rejected Count II on the ground that Alaska does not recognize common law marriages. The court also determined that an additional theory which had arisen during the trial, that of a resulting trust, would not lie for recovery. However, the court found that all prerequisites for a putative marriage had been met when Jack and Marguerite underwent the ceremony in Mexico, and it further found that the Alaska law relating to marital property division applied to putative spouses in the same manner as it applied to legal spouses.

The trial court stated in its July 19, 1974, oral decision that:

. . . a reasonable sum for the defendant [Jack Hager] to pay the plaintiff [Marguerite Hager] in satisfaction of her property rights in the homestead, and I treat these as property rights, is the sum of $15,000.

In a subsequent written decision the court further explained the basis of its holding:

Having found a putative marriage, I follow the California law which holds that the property rights of a putative spouse upon dissolution of that relationship are identical to those of a legally wed

spouse. I therefore apply the Supreme Court's decision in *Vanover v. Vanover*, 496 P.2d 644 (Alaska 1972), and, having weighed the factors considered in that decision, conclude that Mr. Hager's separate property, i. e., the homestead, should be invaded and that Mrs. Hager should be awarded approximately 7% of the value of that homestead, which I fixed at $213,750 or approximately $14,960.50, which I rounded off at $15,000.

In essence, then, the trial court found that a putative marriage existed between Jack and Marguerite Hager and that this marriage would be treated the same as a legal marriage for purposes of applying the property division statute, AS 09.55.-210(6); that upon weighing the equities an invasion of Jack's separate property was warranted, and that as a result Marguerite was entitled to a $15,000 recovery in satisfaction of her property rights in the homestead.

AS 09.55.210(6), the statute dealing with division of property between parties in a divorce action, states in pertinent part that:

> [T]he court, in making the division, may invade the property of either spouse acquired before marriage when the balancing of the equities between the parties requires it . . . ..

In *Vanover v. Vanover*,[1] this court spelled out a number of equitable considerations that should be utilized by the trial court whenever it is called upon to determine whether and to what extent the separate property should be invaded:

> In determining whether separate property acquired before marriage should be invaded, the court should particularly consider factors such as the *duration of the marriage*, the conduct of the parties during the marriage, the manner of acquisition of the property, its value at the time of acquisition and at the time of the property division, and any other factors bearing on whether the equities dictate

that the other spouse is entitled to share in that property. (Emphasis added)[2]

It is Jack's contention in this appeal that the trial court erred in its application of one of the equitable guidelines mentioned in *Vanover*—the duration of the marriage—because the judge included their eight-year meretricious relationship in determining the length of the marriage. He maintains that the duration of the marriage was 19 months, the period of time that the couple was putatively married.

The record reflects that the trial judge, after noting that the Hagers' informal division of their assets other than the homestead was fair, made the following observations in rendering the decision in this matter:

> [I]n the interest of fairness, in light of the length of the relationship, in light of the services performed by the plaintiff and in deciding this I realize that an argument could be made that the court could only consider the services performed during the putative marriage and could not by kind of an analogy from the *Lazzarevich* [88 Cal.App.2d 708, 200 P.2d 49 (Cal.1948)] case look to the services and things done previous to that, but I don't think under all the circumstances that is consistent with the law of Alaska because to the extent that *the plaintiff should have been disfavored for her living situation prior to the putative marriage, it seems to me that the putative marriage or the attempt to go through the putative marriage, if we are to analogize it to an actual marriage, in effect cures any problem. And to the extent that the state has goals regarding these people to impose upon them, they have certainly made an effort to comply with those goals in connection with the activities that led to the putative marriage. So I don't see any reason to distinguish in weighing the equity, so to speak, between the activities of the parties prior to 1968 and their activities aft-*

---

1. 496 P.2d 644 (Alaska 1972).

2. *Id.* at 648.

*erwards.* However, as the court was clear to point out in *Vanover v. Vanover,* to find that the equities justify an invasion of separate property, and for purposes of this case I'm treating the homestead as separate property, did not mean that they require an equal splitting of that property. And consequently I have weighed all the evidence and come to the conclusion that the reasonable sum for the defendant to pay the plaintiff in satisfaction of her property rights, and I treat these as property rights, is the sum of $15,000. (Emphasis added)

The trial court's finding was reiterated in a subsequent colloquy with Jack's attorney:

MR. WALTON: So what Your Honor is buying is that in weighing the equities the court is justified . . .

THE COURT: Can [count] the entire period that the parties cohabitated. Right.

MR. WALTON: Meretricious and putative?

THE COURT: Right.

MR. WALTON: Very good, that's what I was not clear on.

THE COURT: So long as the tail end is a putative relationship, there is a relation-back doctrine.

Jack submits that the relation-back doctrine adopted by the trial court is contrary to the Alaska law which prohibits a meretricious spouse from utilizing the equities afforded to actual or putative spouses. In taking this position, he relies on this court's language in *Sugg v. Morris.*[3] In that case "Margie Morris as plaintiff asked the court below to adjudge her to be a co-owner with the defendant, Frederick Sugg, in certain real property and to declare the respective interests of the parties therein." The record in that matter revealed that the couple began a meretricious relationship in 1955 and occasionally held themselves out as husband and wife. In 1959 a house was purchased in Suggs' name only, although both parties contributed to the down payment and monthly payments thereon. Never having been ceremoniously married, the couple terminated their relationship in 1961. The case was tried through the court without a jury and from a money judgment for $3,600 in favor of Morris, Sugg appealed.

On appeal this court noted that the trial court treated the case "as being in the nature of a divorce action with a division of property involved. . . ." Holding that this was erroneous, we reasoned that the equitable principles which apply to the judicial division of marital property are not applicable to persons who have been living in a meretricious relationship when that relationship comes to an end. Hence the judgment of the trial court in favor of Morris was reversed.

It is Jack's position that in adopting a relation-back doctrine, the trial court granted a recovery which the law as stated in *Sugg v. Morris* prohibits: a recovery to a spouse for her services during the meretricious relationship in the absence of an express agreement or a situation where a resulting trust would properly be imposed. He asserts that the trial court's reasoning is wrong as a matter of law and unjust in its application, for it affords to the meretricious relationship

. . . the equitable principles which apply to the judicial division of marital property of a man and woman who have been living together in lawful wedlock or in a bona fide putative marriage.[4]

In *Sugg v. Morris*[5] this court made the clear distinction between couples who are married, be it legally or putatively, and couples who are not for the purposes of determining the division of property when the relationship comes to an end. Citing

---

3. 392 P.2d 313 (Alaska 1964).

4. *Id.* at 316.

5. *Id.* at 313 (Alaska 1964).

two California cases, *Vallera v. Vallera*[6] and *Flanagan v. Capital Nat'l Bank*,[7] the court in *Sugg v. Morris* observed that certain "equitable principles" are the basis for this distinction.

In *Vallera*[8] the California Supreme Court stated

The controversy is thus reduced to the question whether a woman living with a man as his wife with no genuine belief that she is legally married to him acquires by reason of cohabitation alone the rights of a cotenant in his earnings and accumulations during the period of their relationship. It has already been answered in the negative. *Flanagan v. Capital Nat'l Bank,* 213 Cal. 664, 3 P. 2d 307. Equitable considerations arising from the reasonable expectations of the continuation of benefits attaining the status of marriage entered into in good faith are not present in such a case.[9] (Emphasis added)

Utilization of the relation-back doctrine results in the "equitable considerations arising from the reasonable expectation of a continuation of benefits attending the status of marriage entered into in good faith" being applied to a period when the parties chose not to be married, that is, from 1960 through 1968. This result is clearly contrary to the position adopted by

6. 21 Cal.2d 681, 134 P.2d 761 (1943).

7. 213 Cal. 664, 3 P.2d 307 (1931).

8. *Vallera v. Vallera,* 21 Cal.2d 681, 134 P.2d 761, 762–63 (1943).

9. It is noted that in a case following *Vallera, Lazzarevich v. Lazzarevich,* 88 Cal.App.2d 708, 200 P.2d 49 (1948), the California Court of Appeals was presented with a situation analogous to the one presented herein. In *Lazzarevich* the parties were married in 1921. In 1932 Mr. Lazzarevich obtained an interlocutory decree of divorce from his wife. Subsequently, without the husband's knowledge, his attorney had a final decree entered in 1933. In 1935 the parties became reconciled. In 1945 they separated, and Mrs. Lazzarevich discovered that the final decree had been entered. Shortly thereafter, they became reconciled again and lived together for about six months. In 1946 Mrs. Lazzarevich brought an action to recover the reasonable value of work and services performed by her in maintaining a home for Mr. Lazzarevich and their son, and to recover contributions made by her to household expenses. The court, finding no difference between the situation of a woman mistakenly believing that a valid marriage had been contracted and the situation of a woman mistakenly believing that an existing valid marriage had not been dissolved, held that Mrs. Lazzarevich was entitled to recover for the value of her services during the period of the first reconciliation. She was also entitled to recover her contribution of earnings during this period. She was not, however, entitled to any recovery for the period of the second reconciliation, for having discovered that the marriage had been dissolved, she knowingly entered into a meretricious relationship. The court observed:

A different result must obtain as to services performed by plaintiff [Mrs. Lazzarevich] after August 10, 1945. As we have noted, the parties separated on August 1, 1945. On August 10, 1945, plaintiff discovered that the final decree of divorce had been entered on September 6, 1933. On October 1, 1945, she went to live with defendant and continued to do so until April 1, 1946. The essence of the right of a putative wife to recover for services rendered the putative husband is her belief in the validity of a marriage between them. After August 10, 1945, plaintiff was no longer an innocent, deluded, putative wife. She no longer believed that she was the defendant's wife. She knew that she was not. The relationship between the parties was meretricious after October 1, 1945. Plaintiff was fully aware of the nature of the relationship. The fact that she returned to defendant upon his promise to remarry her is of no import. The "[e]quitable considerations arising from the reasonable expectation of a continuation of benefits attending the status of marriage entered into in good faith" which had existed prior to August 10, 1945, did not exist thereafter. *Vallera v. Vallera,* 21 Cal.2d 681, 685, 134 P.2d 761, 763. In the absence of an express agreement that plaintiff would be compensated for services performed after that date, she has no right to compensation therefor. Here there was no express agreement that she should be compensated [citations]. The trial court awarded plaintiff $50 a month for the six months from October 1, 1945, to April 1, 1946, a total of $300. Plaintiff may not recover for this period. (at 55–56)

this court in *Sugg v. Morris* and the cases that opinion relied on, *Vallera* and *Flanagan*. We find, therefore, that the trial court's ruling on this issue was erroneous.

■ In spite of the trial court's error with respect to the "duration of the marriage," upon reviewing the factors enunciated in *Merrill v. Merrill*[10] and *Vanover v. Vanover*[11] we are unable to find the "property division is clearly unjust"[12] in this case. In *Merrill* this court set forth a number of factors which the trial court should consider in resolving property division questions. We observed in a footnote that

> the principal factors . . . are the respective ages of the parties; their earning capacity; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any.[13]

In *Vanover* we noted that the *Merrill* criteria had continuing validity, including relevancy regarding the question of division of precoverture property.

Particularly appropriate to the case at bar is the "manner of acquisition" of the homestead property and its "value at the time of acquisition and at the time of property division."

The record reflects that it was Marguerite who initiated the plan to homestead, and further, that while Jack made a few trips to the land office, Marguerite went at least 10 times and became "quite efficient about looking up property." After a friend suggested to Jack and Marguerite that property near him might be available for homesteading, it was Marguerite who inquired at the land office as to its availability and obtained the information and papers so that Jack could file on the land.

At the homestead Marguerite assisted in building a lean-to and roof over a trailer which was situated on the property. During the trial Marguerite estimated the value of her labor in doing certain scraping, building, roofing, root pulling, hauling, shoveling, peeling, sealing and seeding on the property at about $800. (Jack valued his total labor at about $2,000.) In addition, Marguerite's assistance to Jack included housekeeping and cooking, taking care of the books, and paying the bills.

While the value of the homestead in 1969 is unknown, its worth at the time of trial according to Jack's testimony was $213,750.

In view of the fact that the parties made an informal division of their assets other than the homestead, the contested award to Marguerite, which is less than 8% of the value of the homestead, cannot, in our opinion, be held to be "clearly unjust" upon considering the factors spelled out in *Merrill*[14] and *Vanover*.[15]

The judgment is affirmed.

10. 368 P.2d 546 (Alaska 1962).

11. 496 P.2d 644 (Alaska 1972).

12. In the recent decision of *Courtney v. Courtney*, 542 P.2d 164, 169 (Alaska 1975), this court observed:

> We have repeatedly stated that a judicial division of property is left by the statute [AS 09.55.210(6)] to the broad discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is shown. The aggrieved party must show that the property division is clearly unjust. (Citations omitted)

13. 368 P.2d 546, 547–48 n. 4 (Alaska 1962).

14. *Merrill v. Merrill*, 368 P.2d 546 (Alaska 1962).

15. *Vanover v. Vanover*, 496 P.2d 644 (Alaska 1972).