[Civ. No. 26491.   Second Dist., Div. Four.   Mar. 15, 1963.]

POLLY M. MILLER, Plaintiff and Appellant, v. MARY F. JOHNSON, as Guardian, etc., et al., Defendants and Respondents.

Cadoo & Tretheway and John C. Moore for Plaintiff and Appellant.

Malloy & Shadle and Joseph Besnah for Defendants and Respondents.

BURKE, P. J.—Plaintiff seeks to establish rights to property of a decedent on the ground that she is the surviving spouse or (alternatively) the putative spouse of Ralph E. Miller, decedent. Defendants are the children of decedent by a prior marriage.

Plaintiff married Burton C. Wells in 1920 and obtained a divorce from him in 1945 in Dallas, Texas. She married Prestley H. Walker in 1947 in Dallas, and the parties separated in California in July 1956, when the husband returned to Texas. No divorce was secured by either party and the parties were not in contact with each other after the separation. The case was tried on the assumption that the Walker marriage was in full force and effect on August 28, 1957, when plaintiff and the decedent went to Tijuana.

On August 28, 1957, plaintiff drove to Tijuana, Mexico, with decedent. Upon arrival they went into an office which had a sign on the door, "Divorces and Marriages." Only one man was in the office. No other person, stenographer or secretary was present during their visit. The parties told the man they wanted to secure a divorce for Mrs. Walker and wanted to get married. The man said he could accommodate them, and, after asking a few questions and making a a few notes, he allegedly gave them a document written in Spanish which purported to be a divorce decree. Mr. Miller asked the man if the purported divorce was good and he stated, "In any state." The marriage "ceremony" followed, consisting in the man asking Mr. Miller, "Do you take this woman to be your lawful wedded wife?" to which Mr. Miller replied, "I do," and then asking plaintiff, "Do you take this man to be your lawful wedded husband?" to which plaintiff ansered "I do"; a ring was placed on plaintiff's finger and the man pronounced the parties man and wife. They kissed and left the office.

Plaintiff and Mr. Miller lived together thereafter as husband and wife at Inglewood, California, until his death; Mr. Miller worked and paid the bills; furniture was purchased to-

gether; joint income tax returns were filed for the years 1957, 1958 and 1959; plaintiff cosigned a promissory note with Mr. Miller in November 1959; plaintiff testified she believed she was lawfully married to Mr. Miller during this entire period.

Plaintiff seeks an interest in a life insurance policy issued by Travelers Insurance Company on the life of decedent having a face value of $5,000, naming the children of decedent, who are defendants herein, as beneficiaries, and an interest in a profit sharing plan provided by decedent's former employer which likewise names the children as beneficiaries.

After trial without a jury, judgment was entered for defendants. In its findings of fact the court concluded plaintiff was neither the wife nor the putative spouse of Ralph E. Miller at the date of his death nor at any other time; the purported ceremony at Tijuana, Mexico, was not in truth or in fact a marriage ceremony; plaintiff did not believe she was married to Ralph E. Miller; she did not enter into the purported marriage in good faith; plaintiff did not obtain a valid divorce from her former husband. In its conclusions of law the court declared that no issue as to an estoppel of defendants to deny the validity of the purported marriage was raised by the pleadings, pretrial statement or order or during presentation of evidence, but that it had been raised for the first time on closing argument and was therefore not properly before the court for consideration; and further concluded that plaintiff, as a matter of law, had no right to the proceeds of the insurance policy or the profit sharing plan and that she take nothing by reason of her complaint. Plaintiff appeals from the judgment thereon and raises two issues:

1. Was plaintiff the wife or putative spouse of the decedent?

2. Were defendants estopped from asserting any invalidity of the purported marriage of plaintiff and decedent?

Essentially plaintiff seeks a review of the evidence to reverse the trial court's judgment. ▮▮ In the case of *Mears* v. *Mears*, 180 Cal.App.2d 484, 501 [4 Cal.Rptr. 618], it is stated: ". . . a trial judge has an inherent right to disregard the testimony of any witness, or the effect of any prima facie showing based thereon when he is satisfied that the witness is not telling the truth, or his testimony is inherently improbable due to its inaccuracy, due to uncertainty, lapse of time, or interest or bias of the witness." Plaintiff had been previously married twice and was thoroughly familiar with the usual procedures involved in securing a divorce and contracting a marriage.

Plaintiff testified she was given a typewritten document in Tijuana, introduced in evidence, which was in Spanish. A translation of this document was read into the record which is not before this court. According to the translation a power of attorney was executed on August 10, 1957, and a divorce decree was issued on August 17, 1957. Notwithstanding these recitations, plaintiff testified that she was in Tijuana only on the 28th of August. She stated that the man in the marriage office wrote out certain papers by hand and did not use a typewriter. Finally, she acknowledged she received a document some four weeks after the 28th of August 1957, but doubted that it was the one to which we have previously referred.

It would appear from the record that the "man" in the "divorce-marriage" office concocted the document to make it appear that a proxy divorce had preceded the marriage and that the two were not contemporaneous. In any event, it is obvious that plaintiff and the deceased had not been concerned with the legality of their actions and that plaintiff was merely shedding one husand and annexing another with only token propriety. Her views were well illustrated in one of her answers to the judge; "Well, I am afraid, your Honor, you get my husbands mixed up. I've got so many of them."

■ Plaintiff properly contends that the essential basis of a putative marriage is a belief in the existence of a valid marriage. (*Vallera* v. *Vallera*, 21 Cal.2d 681 [134 P.2d 761].) But there must also be a diligent attempt to meet the requisites of a valid marriage. (*Flanagan* v. *Capital Nat. Bank*, 213 Cal. 664 [3 P.2d 307].) The trial court found plaintiff neither believed in good faith she was validly married to decedent nor had made any diligent attempt to meet the requisites of a valid marriage. The usual putative marriage arises where it is solemnized in due form and celebrated in good faith but because of some legal infirmity is either void or voidable. (*In re Krone's Estate*, 83 Cal.App.2d 766 [189 P.2d 741].) ■■ Here, the farcical solemnization of divorce and marriage fails to meet any tests and negates good faith.

Plaintiff asserts that the defendants, children of decedent, are estopped from asserting any invalidity in the purported marriage of plaintiff and decedent because they are in privity with the decedent who assisted plaintiff in procuring a purported divorce and paid the prescribed fee both for the divorce and the purported marriage ceremony. ■ In *Safway Steel Products, Inc.* v. *Lefever*, 117 Cal.App.2d 489, 491 [256 P.2d 32], it is stated: " 'In general, four things are es-

sential to the application of the doctrine of equitable estoppel: first, the party to be estopped must be apprised of the facts; second, he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; third, the other party must be ignorant of the true state of facts; and fourth, he must rely upon the conduct to his injury.' "

In this case it is obvious that plaintiff was not ignorant of the true state of facts nor was she innocent in any connotation pertinent to this issue.

The trial court found that plaintiff not only failed to prove a divorce from her former husband, but failed to prove either a valid or a putative marriage to Mr. Miller. These findings are well supported by the evidence.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.