[Civ. No. 64905. Second Dist., Div. Three. Aug. 16, 1982.]

In re the Marriage of SHIRLEY and CLIFFORD E. MONTI.
SHIRLEY MONTI, Appellant, v.
CLIFFORD E. MONTI, Respondent.

COUNSEL

Hadassa K. Gilbert for Appellant.

Lequita J. McKay for Respondent.

OPINION

KLEIN, P. J.—Appellant Shirley Monti (Shirley) appeals from an order vacating with prejudice her order to show cause and petition for dissolution. The trial court found that Shirley was not a putative spouse within the meaning of Civil Code section 4452,[1] because the Montis did not enter, or purport to enter, into another marriage after their marriage was terminated on May 26, 1959, in the Ohio court.

Shirley timely appeals contending the trial court erroneously found she was not a putative spouse. We agree with her contention and remand this case to the trial court for further proceedings in accordance with this opinion and the Family Law Act.

### PROCEDURAL AND FACTUAL BACKGROUND

Shirley and respondent Clifford Monti (Clifford) were married in Ohio on June 26, 1957. A final divorce decree dissolving their marriage was entered May 26, 1959, in the Ohio Court of Common Pleas.

Although the exact date is not clear, Shirley and Clifford reconciled and moved to California sometime after March 28, 1959. They lived together in San Francisco and then moved to Los Angeles. Working out of their home, Shirley and Clifford owned and operated the Four C's Vending Company. Shirley handled the bookkeeping while Clifford maintained the vending machines.

On December 21, 1963, Thomas Edward Monti was born to Shirley and Clifford.

---

[1] Civil Code section 4452 provides in pertinent part: "Whenever a determination is made that a marriage is void or voidable and the Court finds that either party or both parties believed in good faith that the marriage was valid, the Court shall declare such party or parties to have the status of a putative spouse...."

All code references are to the Civil Code unless otherwise indicated.

In July 1981 Shirley and Clifford separated when Clifford moved out of their residence. Shirley continued doing the bookkeeping for the business out of their home until September 7, 1981, when Clifford removed all the books and records.

On September 14, 1981, Shirley filed a petition for dissolution of marriage and secured an order to show cause with a mandatory order from Judge Rafeedie directing Clifford to return to her the vending machine business books and records.

On September 16, 1981, Clifford obtained an order to show cause shortening time from Commissioner Alexander on his motion to vacate the mandatory order. Attached to this notice of motion was a certified copy of the Montis' 1959 divorce decree.

On September 21, 1981, the trial court vacated Shirley's order to show cause and the mandatory order.

On October 27, 1981, Shirley again secured an order to show cause with the same mandatory order, from Commissioner Schemp. This time in her supporting declaration she asserted that she was a putative spouse as follows: "... We resumed marital relations on May 7, 1959 (his birthday) and decided that we would stay together and go to California. While I cannot remember the exact conversation I do remember that I did ask him if we had to do anything about the divorce proceedings and he said no because nothing would happen unless he made an appearance in Court. When we came to California I believed we were still married. I never had any indication that the divorce proceedings in Ohio had become final until some time in July of this year [1981], after Cliff had moved out, when he told me that his attorney had told him that there might have been a final decree in Ohio. While I might very well have lived with Cliff in a non-marital relationship, I would *never* have had a child unless I believed I was married. The entire time I lived with Cliff as his wife, I truly believed that I was in fact legally married to him."

On November 6, 1981, Clifford obtained another order shortening time on motion to vacate the order to show cause and to dismiss the petition for dissolution again from Commissioner Alexander. On November 13, 1981, the motion was heard at which time Clifford did not contradict the allegations set forth in Shirley's declaration.

On December 31, 1981, Commissioner Alexander made the ruling from which Shirley appeals. The trial court found that the Montis' marriage was terminated on May 26, 1959, and thereafter the parties did not enter, or purport to enter, into any other ceremony of marriage. Based on these findings, the trial court concluded that there was no void or voidable marriage between the Montis and that Shirley was not a putative spouse.

## DISCUSSION

1. *The Trial Court Erroneously Dismissed Shirley's Petition for Relief as a Putative Spouse.*

Shirley alleges that Clifford led her to believe that their divorce had not become final because he did not make the necessary final appearance in court. Relying on his representations, *she believed that a valid marriage existed until she was informed otherwise in 1981.* She contends that a person who continues to live with an ex-spouse in ignorance of the final dissolution (or divorce) decree and with a good faith belief in the continued validity of the marriage is a putative spouse within the meaning of section 4452.

She also contends that the trial court erroneously dismissed her petition asking for relief under the Family Law Act. We agree with her contentions.

Historically, in 1966 a Governor's Commission on the Family was convened to examine the high incidence of divorce and its consequences. The commission concluded that divorce proceedings had become adversary in nature, sham procedures had developed, and that the evidence gathered for the procedures was often lurid and ludicrous in nature. (4 Assem. J. (1969 Reg. Sess.) pp. 8054-8057.)

Following the findings, the Family Law Act was passed. The main focus of the act was to eliminate the artificial fault standard. "The intent has been to devise practicable procedures and a basis for dissolution which is descriptive of the actual reasons underlying marital breakdown." (*Op. cit. supra,* at p. 8057; see also the Leg. Counsel's Dig. of Sen. Bill No. 252, 2 Stats. 1969 (Reg. Sess.) Summary Dig., p. 241.)

The Family Law Act codified already existing law regarding the status and property rights of the putative spouse. "The sections pertaining

to void marriage are largely declaratory of existing law and *are not intended to work significant substantive changes.*" (Italics added; 4 Assem. J., *supra*, p. 8060; see also Luther & Luther, *Support and Property Rights of the Putative Spouse* (1973) 24 Hastings L.J. 311, 317.)

■ Thus, section 4452 merely codifies the substantive law existing before 1969 defining a putative spouse. Before that time, it was well-settled that the essential basis of a putative marriage *was a belief in the existence of a valid marriage.* (*Vallera* v. *Vallera* (1943) 21 Cal.2d 681, 684 [134 P.2d 761]; *Estate of Edgett* (1980) 111 Cal.App.3d 230, 233 [168 Cal.Rptr. 686]; *Sancha* v. *Arnold* (1952) 114 Cal.App.2d 772, 777 [251 P.2d 67, 252 P.2d 55]; *Estate of Foy* (1952) 109 Cal. App.2d 329, 331-332 [240 P.2d 685].)

Although this principle is usually applied in situations where a ceremonial marriage becomes void or voidable, case law before 1969 applied the principle in situations similar to the case at bar. In *Feig* v. *Bank of Italy etc. Assn.* (1933) 218 Cal. 54 [21 P.2d 421], affd. (1936) 5 Cal.2d 266 [54 P.2d 3], petitioner continued to live with his "wife" in absolute ignorance of the existence of the divorce proceeding and decree. The court stated that he was entitled to an equitable apportionment of gains resulting from their joint efforts if he "in good faith believed himself at all times to be the lawful husband of the decedent, . . ." (*Feig* v. *Bank of Italy etc. Assn., supra*, 218 Cal. at p. 58.)

In *Lazzarevich* v. *Lazzarevich* (1948) 88 Cal.App.2d 708 [200 P.2d 49], a divorce decree was entered by Mr. Lazzarevich's attorney without the knowledge of Mr. and Mrs. Lazzarevich. Before the parties reconciled, Mr. Lazzarevich informed Mrs. Lazzarevich that no final decree had been entered. Based on this representation, Mrs. Lazzarevich lived with Mr. Lazzarevich as husband and wife.

The *Lazzarevich* court held that "[t]here is no valid distinction between the case at bar and cases dealing with a situation where the parties engaged in a marriage ceremony. In the latter class of cases, the putative wife believes in the existence of a valid marriage in good faith, . . . In the case at bar plaintiff had been the lawful wife of defendant. She, in good faith, believed that a second marriage ceremony was unnecessary because the original marriage had never been dissolved, that she was still his lawful wife, and the services were rendered solely because of that belief." (*Lazzarevich* v. *Lazzarevich, supra*, 88 Cal.App.

2d at p. 716.) "The essence of the right of a putative wife to recover . . . is her belief in the validity of a marriage between them." (*Lazzarevich v. Lazzarevich, supra*, 88 Cal.App.2d at p. 718.)

This case potentially presents a situation almost identical to those in *Feig* and *Lazzarevich*. Shirley alleged the following facts: In 1959 Clifford and Shirley reconciled on his birthday. Clifford told her that the pending divorce would not become final unless he appeared in court. Relying on his statement, she believed that a second marriage ceremony was unnecessary because she was still his lawful wife. Meanwhile her attorney entered a final divorce decree without her knowledge. She believed that a valid marriage existed until she found out otherwise in 1981.

Clearly, Shirley has alleged sufficient facts to form the essential basis of a putative marriage. In keeping with the Legislature's intent, the Family Law Act and specifically section 4452, must be interpreted to include as a putative spouse a divorced spouse who continues to live with the ex-spouse in ignorance of the final divorce decree and with a good faith belief in the continuing validity of the marriage.

Therefore, the trial court's dismissal of Shirley's petition asking for relief under the Family Law Act on the grounds that she was not a putative spouse because there was no void or voidable marriage was erroneous.

### 2. *The Principles Enunciated in the Marvin Case Are Inapplicable.*

Clifford contends that the decision in *Marvin v. Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106]) should control this case because the relationship Clifford and Shirley shared was nonmarital in that no void or voidable marriage existed. *Marvin* has no applicability to the facts of this case. As discussed above, the essence of a putative spouse is a good faith belief in the existence of a valid marriage. Such a situation is distinguishable from a *Marvin* circumstance where both parties elect to remain unmarried and instead base their relationship on an implied or express contractual agreement. In a *Marvin* relationship, there is no belief, good faith or otherwise, that a valid marriage exists.

### 3. *Failure to Comply With Code of Civil Procedure Section 1008 Need Not Result in Dismissal of This Appeal.*

Clifford claims that the October 27, 1981, order to show cause seeking the same relief sought in the September 14, 1981, order failed to comply with Code of Civil Procedure section 1008, subdivision (b).[2] Because of this failure, Clifford argues that the second order of December 31, 1981, should be revoked, which would leave the first ruling standing. Clifford argues that the first ruling would be the proper ruling from which to appeal, and since a notice of appeal was not filed within 60 days after the date of service of this notice, the pending appeal is not timely. We disagree.

For failure to comply with this section, either Clifford could have moved ex parte for a revocation of the order, or this court could find Shirley in contempt and revoke the second order. Clifford did not move to revoke the order so that he also has violated the section by raising the point on appeal. (*Moore v. Moore* (1955) 133 Cal.App.2d 56, 60 [283 P.2d 338].)[3] Further, the penalties are not mandatory. The section carefully uses the term "may" and not "shall." (*Moore v. Moore, supra,* at p. 60.)

Given this choice, in the interests of justice, we do not revoke the December 31, 1981, order but undertake to decide this case on its merits.

---

[2] Code of Civil Procedure section 1008, subdivision (b) provides in pertinent part: "(b) When the party who originally made an application for an order which was refused in whole or part, ... makes a subsequent application for the same order upon an alleged different state of facts, it shall be shown by affidavit what application was made before, when and to what judge, what order or decision was made thereon, and what new facts are claimed to be shown. For a failure to comply with this requirement, any order made on such subsequent application may be revoked or set aside on ex parte motion."

[3] The *Moore v. Moore, supra,* 133 Cal.App.2d 56, decision was based on Code of Civil Procedure section 1008 before it was amended in 1978. That section provided in pertinent part: "When an application for an order has been made to a judge, or to the court, and refused in whole or in part, ... and subsequent application for the same order, upon an alleged different state of facts, shall be made, it shall be shown by affidavit what application was before made, when and to what judge, what order or decision was made thereon, and what new facts are claimed to be shown. For a failure to comply with this requirement, any order made on such subsequent application may be revoked or set aside on ex parte motion. [¶] A violation of this section may be punished as a contempt; and an order made contrary thereto may be revoked ... or vacated by a judge of the court in which the action or proceeding is pending." (Stats. 1951, ch. 1737, § 134, p. 4132.)

The statute as amended did not significantly affect the prior law on which this case is based.

## CONCLUSION

In keeping with the Legislature's intent in enacting the Family Law Act, we conclude that section 4452 must be interpreted to include as a putative spouse a divorced spouse who continues to live with her/his ex-spouse with a good faith belief in the continued validity of their legal marriage in ignorance of the final divorce or dissolution decree.

We, therefore, vacate the trial court's finding that Shirley was not a putative spouse and its' dismissal of her petition for relief. We remand this case for further proceedings in compliance with the Family Law Act.

Lui, J., and Danielson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 13, 1982.