[Civ. No. 28072. Fourth Dist., Div. One. Aug. 11, 1983.]

SHARON DOTSON WAGNER, Plaintiff and Appellant, v. COUNTY OF IMPERIAL, Defendant and Respondent.

## COUNSEL

Sutherland & Gerber and Lowell F. Sutherland for Plaintiff and Appellant.

Rhoades, Hollywood & Neil, Roger G. Perkins and Robert W. Harrison for Defendant and Respondent.

## OPINION

**BROWN (Gerald), P. J.**—Plaintiff Sharon Wagner appeals a judgment favoring the County of Imperial (County) on her complaint for Clifton Wagner's wrongful death.

In October 1976, Sharon and Clifton exchanged personal marriage vows. At Clifton's request, Sharon promised to take his name, be his wife, love him, have his children and live with him all their lives in sickness and health. Sharon and Clifton began living together and held themselves out as a married couple. In May 1977, their son was born. Sharon and Clifton lived together with their son until Clifton was killed in a traffic accident in October 1978.

Alleging she was Clifton's surviving putative spouse, Sharon sued the County under Code of Civil Procedure[1] section 377 for wrongfully causing his death by maintaining its property in a dangerous condition. Under section 597 the court ordered a separate trial on the issue whether Sharon was Clifton's putative spouse; the parties waived jury trial on such issue. After trial the court found Sharon was dependent on Clifton and believed in good faith she was validly married to him. The court also found the relationship between Sharon and Clifton was a void or voidable common law marriage. However, the court held Sharon was not a putative spouse entitled to sue under section 377 for Clifton's wrongful death, saying: "The law does not permit recovery for wrongful death by a party to a marital agreement where no actual solemnization has occurred." The court entered judgment for the County and Sharon appeals.

■■■ Sharon contends the court erred in ruling she was not entitled to recover for Clifton's wrongful death because she and Clifton did not participate in a marital solemnization ceremony. Under section 377 an action for wrongful death may be brought by the decedent's putative spouse where such putative spouse was dependent on the decedent. Section 377, subdivision (b)(2) defines putative spouse as "the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid." Here the court specifically found Sharon met all the elements of section 377, subdivision (b)(2)'s definition of putative spouse: Sharon's relationship with Clifton was a void or voidable common law marriage but Sharon believed in good faith they were validly married. The court further found Sharon was dependent on Clifton. Despite such findings the court said Sharon could not recover for Clifton's wrongful death because "[t]he law does not permit recovery for wrongful death by a party to a marital agreement where no actual solemnization has occurred."

Relying on *Miller v. Johnson* (1963) 214 Cal.App.2d 123, 126 [29 Cal.Rptr. 251] and *Estate of Krone* (1948) 83 Cal.App.2d 766, 768 [189 P.2d 741], the superior court said: "The putative marriage is one that has

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

to be solemnized in due form and celebrated in good faith on the part of one or both of the parties, but which by reason of legal infirmity is either void or voidable. The marriage must be solemnized, authenticated with a certificate of registration of marriage filed in California." However, although the usual putative marriage situation may arise under circumstances where a marriage is duly solemnized and celebrated in good faith but suffers from a legal infirmity, lack of a solemnization ceremony does not necessarily mean bad faith precluding finding a putative marriage. (See *Sancha* v. *Arnold* (1952) 114 Cal.App.2d 772 [251 P.2d 67, 252 P.2d 55]; *Santos* v. *Santos* (1932) 32 Cal.App.2d 62 [89 P.2d 164].)

The Legislature specifically defined "putative spouse" in section 377, subdivision (b)(2). Nothing in section 377, subdivision (b)(2)'s clear and unambiguous definition of "putative spouse" requires a solemnization ceremony. ■ Where, as here, a statute specifically prescribes a meaning for particular terms used by it, such meaning is generally binding on the courts. (See *Urban Renewal Agency* v. *California Coastal Zone Conservation Com.* (1975) 15 Cal.3d 577, 584-585 [125 Cal.Rptr. 485, 542 P.2d 645].) The County contends in adopting section 377, subdivision (b)(2) the Legislature intended to codify existing case law defining "putative spouse" to require a solemnization ceremony. However, the County points to nothing in section 377, subdivision (b)(2)'s legislative history showing such intent. Indeed, the County concedes such legislative history does not clearly show what the Legislature intended to encompass in section 377, subdivision (b)(2)'s definition of "putative spouse." Under these circumstances the County's assertion the Legislature intended section 377, subdivision (b)(2) to require a solemnization ceremony is pure speculation.

■ To establish she was Clifton's putative spouse under section 377, Sharon was not required to show she and Clifton participated in a solemnization ceremony. Under section 377 Sharon must only prove she had a good faith belief her marriage to Clifton was valid; solemnization would be at most evidence of such good faith belief. Construing Civil Code section 4452's similar definition of "putative spouse," the court in *In re Marriage of Monti* (1982) 135 Cal.App.3d 50, 56 [185 Cal.Rptr. 72], said "the essence of a putative spouse is a good faith belief in the existence of a valid marriage." Here the superior court specifically found Sharon believed in good faith she was validly married to Clifton. The court's legal conclusion Sharon was not Clifton's putative spouse is contrary to such express finding of good faith. The court should have held Sharon was Clifton's putative spouse. As Clifton's surviving dependent putative spouse, Sharon is entitled to sue the County for his wrongful death.

The judgment is reversed.

Wiener, J., and Butler, J., concurred.

A petition for a rehearing was denied August 26, 1983, and respondent's petition for a hearing by the Supreme Court was denied October 5, 1983.