[No. B042591. Second Dist., Div. Four. Oct. 18, 1989.]

CENTINELA HOSPITAL MEDICAL CENTER et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
JESSE WILLIS, Real Party in Interest.

972

**COUNSEL**

Veatch, Carlson, Grogan & Nelson, Horvitz & Levy, S. Thomas Todd and Douglas G. Benedon for Petitioners.

No appearance for Respondent.

David Drexler for Real Party in Interest.

**OPINION**

**GEORGE, J.**—Real Party in Interest Jesse Willis (Willis) filed a complaint against petitioners Centinela Hospital Medical Center and Mahmoud Nouh, M.D. (jointly referred to herein as petitioners), seeking damages for the wrongful death of Ann Willis (decedent), whom Willis alleged to be his wife. (Code Civ. Proc., § 377.)[1] Petitioners moved for summary judgment

---

[1] In pertinent part, Code of Civil Procedure section 377 provides: "(a) When the death of a person is caused by the wrongful act or neglect of another, his or her heirs . . . may maintain an action for damages against the person causing the death, . . . [¶](b) For the purposes of subdivision (a), 'heirs' means only the following: . . . [¶](2) . . . if they were dependent on the decedent, the putative spouse . . . . [¶] As used in this paragraph, 'putative spouse' means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid . . . ."

on the ground that Willis and decedent were not married and knew they were not married; hence, Willis lacked standing to sue for decedent's alleged wrongful death. The Superior Court denied petitioners' motion, and we issued an alternative writ.

## FACTUAL AND PROCEDURAL HISTORY

On November 11, 1987, decedent came to Centinela Medical Center, was examined by Dr. Nouh, and was discharged. Decedent died later that day of hypertensive heart disease. Decedent's certificate of death identifies her as "Ann McCoy" and lists her marital status as "divorced."

On April 21, 1988, Willis filed his complaint for wrongful death, alleging that decedent's death was due to petitioners' medical negligence. He further alleged that he was the decedent's husband and her heir at law. Willis did not allege he was dependent on decedent at the time of her death.

Willis's deposition testimony related the following history of his relationship with decedent. Since the winter of 1964, until her death on November 11, 1987, Willis and decedent continuously lived together.[2] Although they never had children, they planned to have children once they were married.

In September 1986, they made plans to marry in Las Vegas, Nevada; however, due to financial difficulties brought on by an automobile accident, the marriage never took place. The wedding date was not rescheduled because Willis and decedent could not accumulate the money for a wedding celebration.

No one explained to Willis nor was he aware that he and decedent could be married at a courthouse for a nominal fee.

Over the Fourth of July weekend of 1987, Willis and decedent visited Las Vegas but did not get married.

In Willis's sworn declaration, subsequently filed in opposition to the motion for summary judgment, the following additional facts were related. Willis and decedent had lived together continuously from 1976 until her death on November 11, 1987. Sometime in 1977, Willis and decedent exchanged personal marriage vows; decedent promised "to take [Willis's] name and be [his] wife, to love [him], live with [him], bear [his] children,

---

[2] As will be seen below, this date for the commencement of Willis's and decedent's cohabitation differs from that related in his later declaration, where he states he and decedent began cohabiting in 1976.

and to live our lives together through sickness and health till death [did them] part." Following this exchange of personal vows, Willis and decedent lived as husband and wife. Decedent changed the name on her driver's license from Ann McCoy to Ann Willis, was covered by Willis's health insurance policy, and used the name Ann Willis when she applied for unemployment benefits and sought medical treatment from doctors and hospitals. Willis and decedent shared a joint bank account, jointly purchased an automobile, applied for a loan together, and took yearly trips together as husband and wife. Willis and decedent "believed that [they] were what was called common law husband and wife, and that [their] marriage was proper in every respect."

## CONTENTION

Petitioners contend Willis lacks standing to sue for decedent's alleged wrongful death because he does not have an objective good faith belief in the existence of a valid marriage to decedent; accordingly, Willis does not qualify as a putative spouse pursuant to Code of Civil Procedure section 377. Petitioners further argue that, in any event, the uncontroverted evidence reveals that Willis did not meet the statutory requirement of being "dependent on the decedent" at the time of her death. (§ 377, subd. (b)(2).)

Willis relies solely on the foregoing statute and *Wagner* v. *County of Imperial* (1983) 145 Cal.App.3d 980 [193 Cal.Rptr. 820] in support of his assertion that his good faith belief in the validity of the marriage rendered him a putative spouse with standing to sue for decedent's alleged wrongful death.

## DISCUSSION

A wrongful death action is a creature of statute; it exists only to the extent defined by the Legislature. (*Justus* v. *Atchison* (1977) 19 Cal.3d 564, 575 [139 Cal.Rptr. 97, 565 P.2d 122], disapproved on another ground in *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 171 [216 Cal.Rptr. 661, 703 P.2d 1].) The wrongful death statute, Code of Civil Procedure section 377, quoted *ante,* limits an action for wrongful death to the decedent's heirs. For the purposes of this appeal, section 377, subdivision (b)(2), defines an "heir" as a putative spouse dependent upon the decedent, who is "the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid."

■ Willis does not claim that he was a party to a void or voidable marriage.[3] It is the validity of Willis's "good faith" belief in his alleged marriage which is at the heart of the present case. We hold that, as a matter of law, Willis reasonably could not believe he was validly married; consequently, we order the issuance of a peremptory writ.

"'Good faith belief' is a legal term of art, and in both the civil and criminal law a determination of good faith is tested by an objective standard." (*In re Marriage of Vryonis* (1988) 202 Cal.App.3d 712, 720 [248 Cal.Rptr. 807].) Moreover, the good faith belief must be in the existence of a *lawful* California marriage and must be reasonable. (*Ibid.*)[4]

Willis asserts that he believed he and decedent had entered into a common law marriage and cites us to a list of indicia which he claims supports his contention of a good faith belief in the existence of a lawful marriage—the private vows exchanged between him and decedent, decedent's change of name, their shared bank account, and the purchases made and debts incurred by them together. This assertion fails because, as a matter of law, Willis's belief was unreasonable as California abolished common law marriage in 1895. (*Elden* v. *Sheldon* (1988) 46 Cal.3d 267, 275 [250 Cal.Rptr. 254, 758 P.2d 582].)

Although Willis declares he and decedent exchanged private vows, he admits they never made any attempt to comply with the procedural requirements of a valid marriage. Without some effort to comply with Civil Code sections 4100 and 4200, Willis's indicia, standing alone, are insufficient to support a reasonable, good faith belief in a lawful California marriage. (*In re Marriage of Vryonis, supra,* 202 Cal.App.3d at p. 721.)

Willis relies on *Wagner* v. *County of Imperial, supra,* 145 Cal.App.3d 980, as did the court below when it denied petitioners' motion for summary judgment. In *Wagner,* plaintiff and decedent had lived together for two years after exchanging private vows similar to those exchanged by the

---

[3] A void marriage is an incestuous, bigamous, or polygamous one. (Civ. Code, §§ 4400, 4401.) A voidable marriage is one where there was (a) no capacity by one party to consent due to youth or unsoundness of mind, (b) fraudulently or forcibly obtained consent, (c) physical incapacity of entering into a marriage, or (d) a living spouse of either party who has been absent five years or more and is believed dead. (Civ. Code, § 4425.)

[4] Civil Code section 4100 defines the marriage relationship as "a personal relation arising out of a civil contract between a man and a woman, to which the consent of the parties capable of making that contract is necessary. Consent alone will not constitute marriage; it must be followed by the issuance of a license and solemnization as authorized by this code . . . ."

Civil Code section 4200 provides: "Marriage must be licensed, solemnized, authenticated, and the certificate of registry of marriage filed as provided in this article; but noncompliance with its provisions by others than a party to a marriage does not invalidate it."

parties in the instant case. They had one child together, and the trial court found that plaintiff was dependent upon decedent. The *Wagner* court concluded the *only* requirement under Code of Civil Procedure section 377 for establishing one's status as a putative spouse, is a good faith belief in the validity of the marriage. (*Wagner* v. *County of Imperial, supra,* 145 Cal.App.3d at p. 983.)

We respectfully decline to follow the holding of the Fourth District in *Wagner.* Instead, we find the reasoning of our court in *In re Marriage of Vryonis, supra,* to be more persuasive. Moreover, the Supreme Court in *Elden* v. *Sheldon, supra,* 46 Cal.3d 267, recently held that because of "the state's interest in promoting the responsibilities of marriage and the difficulty of assessing the emotional, sexual and financial relationship of cohabiting parties to determine whether their arrangement was the equivalent of a marriage," a cause of action for loss of consortium could not be extended to unmarried cohabiting couples. (*Id.,* at p. 279.) Although the case at bench differs from *Elden* in that Willis is suing under the wrongful death statute, the holding of *Elden* is sufficiently broad to preclude Willis's wrongful death suit. (*Matuz* v. *Gerardin Corp.* (1989) 207 Cal.App.3d 203, 207 [254 Cal.Rptr. 725].)

Having so concluded, we need not and do not address petitioners' alternative assertion.

### DISPOSITION

Let a peremptory writ of mandate issue, directing the trial court to vacate its order of May 17, 1989, Los Angeles Superior Court Case No. SWC 99211, entitled Willis v. Centinela Valley Community Hospital et al., which denied petitioners' motion for summary judgment, and to make a new and different order granting that motion. Petitioners are to recover their costs.

Woods (A. M.), P. J., and Danielson, J.,* concurred.

The petition of real party in interest for review by the Supreme Court was denied January 18, 1990.

---

* Assigned by the Chairperson of the Judicial Council.