128 Cal.Rptr.2d 644 (2002)
104 Cal.App.4th 996
CROW IRVINE # 2, Plaintiff, Cross-Defendant and Respondent,
v.
WINTHROP CALIFORNIA INVETORS LIMITED PARTNERSHIP, Defendant, Cross-Complainant and Appellant.
Crow Irvine # 2, Plaintiff, Cross-Defendant and Appellant,
v.
Winthrop California Investors Limited Partnership, Defendant, Cross-Complainant and Respondent.
Nos. G028611, G029013.
Court of Appeal, Fourth District, Division Three.
December 23, 2002.
Rehearing Denied January 13, 2003.
Review Denied April 23, 2003.[*]
*645 O'Melveny & Myers, John F. Daum, Los Angeles, Phillip R. Kaplan, Newport Beach, and Peter R. Afrasiabi; Edwards & Angell, Weaverville, and Barbara L. Moore, for Defendant, Cross-complainant and Appellant in G028611 and for Defendant, Cross-complainant and Respondent in G029013.
Horvitz & Levy, Frederic D. Cohen, Encino, and Nina E. Scholtz; Rus, Miliband & Smith, Ronald Rus and Joel S. Miliband, Irvine, for Plaintiff, Cross-defendant and Respondent in G028611 and for Plaintiff, Cross-defendant and Appellant in G029013.

OPINION
BEDSWORTH, J.
Winthrop California Investors Limited Partnership appeals from a judgment declaring it had no basis to terminate its partnership with Crow Irvine # 2. The parties' partnership agreement provides that the partnership is subject to termination if "either partner believes in good faith that irreconcilable differences between the Partners prevent the Partnership from achieving its purposes...." Winthrop contends the trial court erred in concluding that "good faith belief must be measured by an objective standard, and in rejecting Winthrop's claim of such a belief as "unreasonable." We agree.
The phrase "good faith belief generally requires evaluation of a party's subjective state of mind, without regard to its objective reasonableness. While the reasonableness of a claimed belief may be considered in determining whether their claimed belief is honestly held, it is not a prerequisite. And, nothing in the language of this partnership agreement requires a departure from that general rule. Because the court used an incorrect standard in evaluating Winthrop's claim of good faith belief, the judgment must be reversed and the case remanded for a new evaluation of that issue.
Additionally, we conclude the court erred in relying on its own interpretation of the partnership agreement and finding that the "Partnership is achieving its purposes as set forth in Section 2.3 of the Partnership Agreement." Again, the issue was not whether the court itself interpreted the "purposes" of the partnership as *646 having been achieved, but whether Winthrop believed, in good faith, that they had not. There is support in the record for both positions, and that issue too must be reevaluated on remand.
Finally, our reversal of the judgment and remand of the case for further proceedings renders moot Crow's consolidated appeal challenging the court's refusal to award it attorney fees as prevailing party. We consequently dismiss that appeal.
Winthrop and Crow entered into a partnership agreement in May of 1985. The stated purpose of the partnership was "to acquire, own, finance, develop, improve, lease, operate and manage the Excess Land,[1] together with such other activities (including sale or other disposition of the Excess Land or any portion thereof) as may be necessary, advisable or convenient to the promotion or conduct of the business of the Partnership...." The agreement specifically referenced a "Master Plan" for development of the property, including a timeline, and broken up into phases. Phase I of the plan called for the completion of six multi-story office buildings, two hotels, and retail and entertainment malls by 1994. Phase II included the development of three additional office towers, a mixed-use building for business, convention and hotel space, and a retail arcade, by 2000.
However, pursuant to the terms of the partnership agreement, Crow, the general partner, had the power to make changes to the Master Plan. Although it is unclear whether Crow affirmatively made such changes, or merely failed to comply with the original plan, it is undisputed that neither phase I nor phase II has been completed. Instead, as of 2000, 15 years into the partnership, it had developed only a retail center including stores and restaurants, a movie theater, a parking structure and a putting green. According to Crow, a downturn in economic conditions rendered its initially contemplated development unfeasible.
Moreover, during the existence of the partnership, the partners have engaged in extensive litigation with each other. According to Winthrop, the parties have sued each other (including affiliates) no fewer than seven times. Indeed, in one such case, Winthrop had to sue Crow, in Delaware, for access to partnership records. The court in that case granted partial summary judgment to Winthrop, ordering Crow to provide Winthrop full access to the partnership books and records. In another lawsuit, Crow accused Winthrop of breaching its fiduciary duty, and specifically alleged that "the legal entanglements caused by [Winthrop's] wrongful and fraudulent actions have hindered Crow Development's ability to and multiplied the expense of the continued development of the Development Parcel." In yet another lawsuit, Crow's counsel informed the court that "[t]he parties don't get along. They aren't going to get along any time soon."
Against this backdrop (and no doubt influenced by the fact that after 15 years it had realized a return of only $12 million on its original $45 million investment), Winthrop invoked section 6.6 of the partnership agreement, which gave either partner the right to terminate the partnership based upon its professed "good faith belief that irreconcilable differences between the Partners prevent the Partnership from achieving its purposes...."
Section 6.6 also requires the terminating partner to "make a written offer to purchase be owned by the Partnership ..." *647 chase the Interest of the other Partner ... [which] shall set forth a definite price ... for the other Partner's Interest." The price must "be based on a hypothetical sales price for the portion of the Excess Land and any Improvements thereron then owned by the Partnership and will equal the amount the Offeree Partner would receive if such portion of the Excess land and any Improvements thereon were sold at the hypothetical price for cash subject to existing debt and all allocations and distributions were made as prescribed by Article VIII."
Then, upon receipt of the offer, the offeree partner has the right to either accept the offer, or "purchase for cash the Interest of the Offeror Partner by paying an amount equal to the amount which the Offeror Partner would receive if such portion of the Excess Land and any Improvements thereon were sold at the hypothetical price upon which the Offered Amount was based...."
Crow rejected Winthrop's attempt to terminate the partnership, challenging both its right to do so and the price it had set for the hypothetical sale of the partnership property. That dispute ripened into the declaratory relief action before the trial court.
The trial court determined that Winthrop's "good faith belief that irreconcilable differences were preventing the partnership from achieving its purposes must be measured by an objective standard, i.e., whether a hypothetical "reasonable" partner would have held that belief under these circumstances. The court then reasoned that Winthrop "could not have had a good faith belief that `irreconcilable differences between the partners prevent the achievement of partnership purposes' because the Partnership is achieving its purposes as set forth in Section 2.3 of the Partnership Agreement. Therefore, such a belief could not be objectively or reasonably held, and [Winthrop] did not invoke Section 6.6 in good faith." (Italics added.)
Based upon that reasoning, the court concluded Winthrop's "purported invocation of Section 6.6 [of the partnership agreement] was, and is, invalid, null, void and of no effect." In light of that conclusion, the court did not reach the issue of whether Winthrop's proposed valuation of the partnership property was proper. The court subsequently denied Crow's application for attorney fees as prevailing party.

I
Winthrop challenges the court's determination that "good faith belief must be measured on an objective, rather than a subjective, basis. In reaching that conclusion, the court specifically relied upon In re Marriage of Vryonis (1988) 202 Cal. App.3d 712, 720-721, 248 Cal.Rptr. 807, which held that to qualify as a "putative spouse" for purposes of former Civil Code section 4452 (now Fam.Code, § 2251) a party's good faith belief that his or her marriage was valid must be "objectively reasonable." The Vryonis court supported its holding with the sweeping statement that "`[g]ood faith belief is a legal term of art, and in both the civil and criminal law a determination of good faith is tested by an objective standard." (In re Marriage of Vryonis, supra, 202 Cal.App.3d at p. 720, 248 Cal.Rptr. 807, italics added.) Unfortunately, the cases cited in Vryonis as support for that statement can fairly be described as contradicting it.
Vryonis first cites Russ Bldg. Partnership v. City and County of San Francisco (1988) 44 Cal.3d 839, 853, 244 Cal.Rptr. 682, 750 P.2d 324, for the proposition that "[a] vested right requires more than a good faith subjective belief that one has *648 it." That proposition, however, addresses only the requirements for creating a vested right, and does nothing to distinguish "good faith" from a subjective standard. To the contrary, the quote appears to link the two into a single concept"a good faith subjective belief"
Vryonis next cites Lazar v. Hertz Corp. (1983) 143 Cal.App.3d 128, 141, 191 Cal.Rptr. 849, for the proposition that "[t]he essence of the good faith covenant is objectively reasonable conduct." But of course, the "good faith covenant" is merely a short title for the implied covenant of good faith and fair dealing. As explained by our Supreme Court, the implied covenant of good faith and fair dealing has both a subjective and an objective componentsubjective good faith and objective fair dealing. "A party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable." (Carma Developers (Cal.), Inc. v. Marathon Development California, Inc. (1992) 2 Cal.4th 342, 372, 6 Cal.Rptr.2d 467, 826 P.2d 710; italics added.) "[T]he covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive." (Id. at p. 373, 6 Cal.Rptr.2d 467, 826 P.2d 710.) All of these cases make it clear that there is a recognized distinction between subjective intentions (good faith) and objectively reasonable conduct.
Vryonis next relies upon Theodor v. Superior Court (1972) 8 Cal.3d 77, 98, footnote 13, 104 Cal.Rptr. 226, 501 P.2d 234, for the proposition that the "subjective good faith" of police is insufficient to rehabilitate a defective warrant: "`If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers, and effects," only in the discretion of the police' [Citation.] `Good faith ... is immaterial, and cannot serve to rehabilitate an otherwise defective warrant.' [Citation.]" Obviously, this does not impute an objective component to good faith.
Vyronis next quotes People v. Ruggles (1985) 39 Cal.3d 1, 9, 216 Cal.Rptr. 88, 702 P.2d 170, for the similar proposition that "The probable cause determination that will validate a warrantless search of defendant's vehicle must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely the subjective good faith of the police officers." (Italics added.) Clearly, Ruggles distinguishes between "objective facts" and "subjective good faith."
Finally, Vryonis notes that "[w]ithout question, the hallmark of the law is reasonableness, and `"Reasonableness" of course, is an objective standard, requiring more than good faith.' (In re Arias (1986) 42 Cal.3d 667, 696, 230 Cal.Rptr. 505, 725 P.2d 664.)" (In re Marriage of Vryonis, supra, 202 Cal.App.3d at p. 721, 248 Cal. Rptr. 807.) This is a statement both hard to argue with and hard to reconcile with their idea that good faith requires objective reasonableness.
We cannot find support in these cases for Vryonis' conclusion. Virtually every case specifically links the concept of "good faith" with the qualifier "subjective," and does so within the very quotes relied upon by the Vryonis court. It seems to us that these cases establish nothing more than that the "subjective" good faith standard is not the appropriate standard to apply in those situations. To our minds, they do not suggest that "good faith" must be measured objectively.
We could find only two cases following Vryonis, each of which adopted its statement that the good faith belief standard for establishing putative spouse status refers to an objectively reasonable belief. *649 (Centinela Hospital Medical Center v. Superior Court (1989) 215 Cal.App.3d 971, 975, 263 Cal.Rptr. 672; Welch v. State of California (2000) 83 Cal.App.4th 1374, 1378, 100 Cal.Rptr.2d 430.) But both of those cases simply adopted the holding of Vryonis without any independent analysis. As we have shown, it cannot withstand such analysis.
Crow also relied upon Cotran v. Rollins Hudig Hall Internal, Inc. (1998) 17 Cal.4th 93, 69 Cal.Rptr.2d 900, 948 P.2d 412 for the proposition that "the California Supreme Court has most recently endorsed an objective standard" for evaluating good faith. However, as the Supreme Court itself explained, the issue it addressed in Cotran was the "standard juries apply in wrongful termination litigation to evaluate an employer's `good cause' defense based on employee misconduct." (Id. at p. 99, 69 Cal.Rptr.2d 900, 948 P.2d 412, italics added.) The court was concerned with whether the employer had to prove the factual correctness of the "cause" (e.g., that a terminated employee actually did sexually harass a coworker) or only that the employer believed it in good faith.
Indeed, the focus of the court's concern was that it would be unfair to subject the employee to termination based upon the employer's purely subjective (and unreasonable) belief as to cause, and unfair to subject the employer to liability based upon its reasonable (but ultimately incorrect) assessment of an employment situation. Consequently, the court devised a hybrid standard, pursuant to which the jury would determine "whether at the time the decision to terminate his employment was made, defendants, acting in good faith and following an investigation that was appropriate under the circumstances, had reasonable grounds for believing plaintiff had done so." (Cotran v. Rollins Hudig Hall Internal, Inc., supra, 17 Cal.4th at p. 109, 69 Cal.Rptr.2d 900, 948 P.2d 412.)
Perhaps confusingly to Crow, the Supreme Court did refer to its hybrid standard as the "objective good faith standard," (Cotran v. Rollins Hudig Hall Internal, Inc., supra, 17 Cal.4th at p. 106, 69 Cal.Rptr.2d 900, 948 P.2d 412), but in fact the court never purported to alter the subjective nature of the traditional good faith concept. We can only assume the court was recognizing that the "hybrid" it was creating was something new: "objective good faith." In fact, the court specifically acknowledged that "`good faith' is commonly thought of as subjective in essence." (Cotran, supra, 17 Cal.4th at p. 106, fn. 3, 69 Cal. Rptr.2d 900, 948 P.2d 412.)
And that acknowledgement alone would be a sufficient basis upon which to decide this issue, even if we believed the Supreme Court had intended Cotran to fundamentally alter the nature of the "good faith" standard. Because Cotran was not decided until 1998, thirteen years after the parties entered into this partnership agreement, it certainly could not be relied upon to retroactively alter what the parties meant by the phrase "good faith" in 1985.
Shortly before oral argument, Crow cited this court to Storek & Storek, Inc. v. Citicorp Real Estate, Inc. (2002) 100 Cal. App.4th 44, 122 Cal.Rptr.2d 267, and City of Oakland v. Workers' Comp. Appeals Bd. (2002) 99 Cal.App.4th 261, 120 Cal.Rptr.2d 873, as additional support for its contention that "good faith" requires an objective determination. However, neither case supports the contention.
In City of Oakland, plaintiff sought workers' compensation benefits for psychiatric injury caused by his employer's decision to demote him. The Labor Code specifically precludes such an award if the employer's decision was a "lawful, nondiscriminatory, *650 good faith personnel action. ..." (Lab.Code, § 3208.3, subd. (h).) The court simply adopted, without additional analysis, the hybrid "objective good faith" standard established by the Supreme Court in Cotran for determining whether an employer had "good cause" for taking disciplinary action against an employee. As we have already explained, that hybrid standard was derived because the court wished to bridge the gap between the purely subjective "good faith" standard and the purely factual requirement that the "cause" be proven as true. Indeed, the City of Oakland court specifically noted that in creating the "objective good faith" standard in Cotran, the Supreme Court had "`couplfed] "good faith" with "objectivity"'" (City of Oakland v. Workers' Comp. Appeals Bd., supra, 99 Cal.App.4th at p. 266, 120 Cal.Rptr.2d 873). Consequently, City of Oakland implicitly acknowledged that those concepts were otherwise distinct.
Storek actually undermines Crow's contention. In Storek, Citicorp entered into an agreement to provide financing for completion of plaintiffs construction project. The agreement included a provision that Citicorp could withhold funds if it was not satisfied that the project budget was "in balance." Ultimately, Citicorp made that determination and withheld funds. Plaintiff sued, alleging that Citicorp's determination violated the covenant of good faith and fair dealing. The Court of Appeal rejected that contention, noting that the covenant of good faith and fair dealing can never be interpreted to prevent a party from doing what the contract expressly allows.
But the court then turned to the issue of whether Citicorp's contractual right to claim "dissatisfaction" with the project budget was to be evaluated on a subjective basis or an objective basis. It acknowledged two different lines of cases: One line holds that "satisfaction" is a purely subjective decision which is governed by a good faith standard, and the other holds that the decision must be evaluated in accordance with an objective standard of reasonableness. The court explained the difference between the standards: "In this context, reasonableness and good faith are distinct concepts. A decision is unreasonable when it is arbitrary, capricious, or lacking in evidentiary support. A lack of good faith, on the other hand, suggests a moral quality, such as dishonesty, deceit, or unfaithfulness to duty. [Citation.] When the promisor has the power to make a purely subjective decision, that decision must be made in good faith, but the courts will not examine its reasonableness. [Citations.] Conversely, when the promisor's satisfaction is evaluated under the objective test, the validity of the promisor's decision of satisfaction or dissatisfaction rests only on the reasonableness of the decision; the courts will not examine good faith." (Storek & Storek, Inc. v. Citicorp Real Estate, Inc., supra, 100 Cal.App.4th at p. 59,122 Cal.Rptr.2d 267.)
The court then noted "[t]he choice of objective or subjective test to evaluate a promisor's satisfaction depends upon the intent of the parties, as expressed in the language of the contract. In the absence of a specific expression in the contract or one implied from the subject matter, the preference of the law is for the less arbitrary reasonable person standard." (Storek & Storek, Inc. v. Citicorp Real Estate, Inc., supra, 100 Cal.App.4th at p. 59, 122 Cal.Rptr.2d 267.) Consequently, because the contract in that case did not express any standard, the Storek court applied the objective standard, and clearly distinguished it from "good faith": "Citicorp had no duty to act in good faith in determining whether the condition precedent to its performance had been fulfilled. Citicorp *651 was required only to act reasonably." (Id. at p. 62, 122 Cal.Rptr.2d 267, italics, added.)
This case, of course, is quite different. The parties here did specify a standard by which a partner's decision to dissolve the partnership must be evaluated, i.e., good faith. As Storek repeatedly emphasizes, that standard is subjective.
Crow Irvine nonetheless argues that for purposes of this partnership agreement, the term "good faith belief must be interpreted as stating an objective standard, because that is the only interpretation which makes sense in the context of the partnership agreement, and the only interpretation consistent with the overall purpose of the agreement. We cannot agree.
First, we must note that according to the trial court, the parties stipulated that "no ambiguities exist within the Partnership Agreement." We find that stipulation amazing, given that the parties obviously do not agree on how the agreement should be interpreted. Moreover, because interpretation of a contract is a matter of law for the court, such a stipulation is akin to one purporting to instruct the court on how to interpret a statute, or apply a rule of law. We simply could not be bound by such an agreement.
However, giving the parties the benefit of the doubt, we presume their stipulation was intended only to establish that neither party would be offering extrinsic evidence to persuade the court that its own interpretation of the agreement was the correct one. Consequently, we will look only to the words of the contract, aided by applicable principles of law, to ascertain the parties' intent.
We start with the proposition that "language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case...." (Producers Dairy Delivery Co. v. Sentry Ins. Co. (1986) 41 Cal.3d 903, 916 fn. 7, 226 Cal.Rptr. 558, 718 P.2d 920.) Additionally, Civil Code section 1641 provides: "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."
The phrase "good faith belief is not one of the 59 words and phrases specifically defined in the partnership agreement. But it is used in at least one other provision. Section 4.6B of the partnership agreement addresses the liability that Crow (the general partner) might incur to Winthrop (the limited partner.) Among other things, it provides that "CI shall not be liable, responsible or accountable in damages or otherwise to any other Partner or to the Partnership for any acts performed or failure to act by CI in good faith and in a manner reasonably believed by it to be within the scope of the authority granted to it by this Agreement." (Italics added.) Thus, in section 4.6B, the concept of "good faith" is specifically distinguished from the concept of reasonableness. That distinction certainly supports the conclusion that the parties also did not intend "good faith" as used in section 6.6 to operate as a synonym for "reasonable."
Crow argues, however, that "good faith belief cannot logically be interpreted to require a purely subjective standard, because if "a mere subjective belief is all that `believes in good faith' requires, then the qualifier `in good faith' is superfluous, contrary to the principle that effect must be given to every part of a contract. We disagree. "Good faith" does have a distinct meaning and purpose in the law. As explained in Guntert v. City of Stockton (1974) 43 Cal.App.3d 203, 211, *652 117 Cal.Rptr. 601, good faith "suggests a moral quality; its absence is equated with dishonesty, deceit or unfaithfulness to duty." The express requirement that a party's professed belief be "in good faith" gives the court a framework within which to evaluate the claim. Indeed, we do not mean to suggest a court is ever required to accept a party's characterization of its subjective belief. The court must still examine the surrounding circumstances (including the party's own conduct and the reasonableness of the purported belief) to ascertain whether the party honestly holds, consistent with its duties to the other party, the belief it professes. (See People v. Kurland (1980) 28 Cal.3d 376, 391, 168 Cal.Rptr. 667, 618 P.2d 213 ["If [the affiant] says he did not disclose the facts because he thought they were privileged or immaterial, the evidence may permit an inference that no such belief could have arisen in good faith."].)
And even if "good faith" were superfluous in connection with an asserted belief (and we do not agree it is), that would not obligate us to construe the phrase as meaning something other than what it clearly does.[2] That is tantamount to suggesting that if a contract referred to a "striped zebra," a court must construe "striped" to mean "spotted" to avoid the redundancy. Similarly, such a rule would have long ago driven courts crazy trying to construe settlement agreements in a manner which gives distinct meaning to "waive," "release" and "forever discharge." Superfluity happens, even in the best of agreements. That is why, as explained in every lawyer's favorite maxim of jurisprudence, "superfluity does not vitiate." (Civ. Code, § 3537.)
We also disagree with Crow's assertion that allowing a bickering partner to terminate the partnership based upon a subjective (and perhaps unreasonable) belief that such bickering is undermining the partnership would be inconsistent with the underlying purpose of the termination provision. That termination provision itself must be viewed in the context of the overall agreement, which governs a partnership. Trust and confidence is the essence of a partnership relationship. If that trust and confidence is lost, it would be surprising if the partnership did not suffer: "`The foundation of a professional relationship is personal confidence and trust. Once a schism develops, its magnitude may be exaggerated rightfully or wrongfully to the point of destroying a harmonious accord. When such occurs, an expeditious severance is desirable....'" (Heller v. Pillsbury Madison & Sutro (1996) 50 Cal.App.4th 1367, 1387-1388, 58 Cal.Rptr.2d 336.)
And we are unpersuaded by Crow's contention that allowing the partnership agreement to be terminated by a partner's mere subjective determination creates too big a risk (and too great a danger of misuse) because of the "buy-sell" provision. According to Crow, the fact that the termination provision compels the "offeree" partner to either buy the partnership or sell its own interest means that it "could impose a multi-million dollar obligation on the recipient of the buy-sell offer." But of course, there is no such "obligation." The offeree has the option to either buy or sell. And because the valuation of the partnership is set by the disaffected partner prior to the offeree partner's election, there would appear to be little incentive to set an unreasonable price.
*653 In any event, Crow's preference for a termination provision triggered only by a partner's "reasonable" belief simply does nothing to change the fact that "reasonable" was not the qualifier chosen by the parties at the time of drafting the partnership agreement. The parties agreed that a "good faith" belief was sufficient, and we must enforce the agreement as written. Our conclusion that Winthrop's "good faith belief need not have been objectively reasonable requires this case be remanded to the trial court for reconsideration in light of the proper subjective standard.

II
Finally, for purposes of remand, we must also correct the court's implicit reliance on its own interpretation of the partnership agreement to support its determination that the partnership "is achieving its purposes as set forth in section 2.3 pf the Partnership Agreement."[3]
The court was correct that the termination provision encompasses two issues: The terminating party must establish it holds a "good faith" belief that (1) irreconcilable differences are the cause of (2) the partnership's failure to "achiev[e] its purposes." And the court also correctly understood that the issue of whether the partnership was achieving its purposes requires an evaluation of those "purposes," which are defined in the agreement.
In the usual circumstances, interpretation of a contractual provision is performed by the court, as a matter of law. (Parsons v. Bristol Development Co. (1965) 62 Cal.2d 861, 865, 44 Cal.Rptr. 767, 402 P.2d 839.) The parties, no matter what their subjective beliefs, would be bound by the court's interpretation. However, the issue to be decided here, in construing whether the right of termination under section 6.6 of the partnership agreement was properly triggered, was not the legal interpretation of the partnership's "purposes," but instead whether Winthrop believed in good faith that partnership was not achieving its purposes.
And Winthrop did offer evidence which could have supported a belief that the purposes of the partnership were not really being achievedat least not fully. In particular, Winthrop emphasized (and Crow does not dispute) that the partnership has fallen far short of the extent of "development" contemplated by the original "Master Plan" referenced in the partnership agreement.[4]
Finally, the court's statement of decision appears to conclude that the mere fact that some development of the partnership property continued despite the partners' internecine warfare proves that their differences did not prevent the partnership from achieving its purposes: "During this period of litigation, development of the property has occurred.... As this litigation did not stop the development, this Court finds that the Partnership purposes were not prevented by any dispute between the parties." (Italics added.)
We cannot agree. The partnership's "purpose" of developing the property necessarily implies a goal of achieving some optimal level of development. The agreement *654 demonstrates that the parties intend to make a profit on this venture.[5] Thus, the mere fact that the partnership has managed to do something with the property does not necessarily establish that the partnership is actually "achieving" its purposes. Nor does it establish that Winthrop could not have honestly believed that the curtailed development was caused, at least in part, by the partners' disputes. The court must also reevaluate these issues on remand.
The declaratory judgment is reversed and the case is remanded for further proceedings consistent with this opinion. In light of that reversal, the consolidated appeal (G029013) challenging the court's denial of Crow's claim for attorney fees is dismissed as moot. Winthrop is to recover its costs on appeal.
WE CONCUR: RYLAARSDAM, ACTING P.J., and O'LEARY, J.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published.

(See California Rules of CourtRules 976 and 977).
[1] Defined elsewhere in the agreement as "approximately 147.2 acres of land owned or to
[2] Civil Code section 1641 requires only that a contractual interpretation give effect to every part "if reasonably practical."
[3] Additionally, we must note that the court improperly used that determination to engage in classic "bootstrapping." It concluded that because the partnership was in fact achieving its purposes (as interpreted by the court), no reasonable partner could believe otherwise. But of course, even if an objective standard is applied, that conclusion does not follow at all. A belief can be wrong and yet still reasonable. If the rule were otherwise, there would be no distinction between "reasonable" and "correct."
[4] Crow does dispute the reason for the curtailed development.
[5] Section 8.1 of the agreement details how the parties are to allocate their profits and losses.